RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0391p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SHABTAI STEVE ADIKA,

       *Plaintiff-Appellant,*

    *v.*

MIKE SMITH,

       *Defendant-Appellee.*

No. 05-6831

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 05-00307—Charles R. Simpson III, District Judge.

Argued: September 12, 2006

Decided and Filed: October 24, 2006

Before: BOGGS, Chief Judge; MARTIN, Circuit Judge; OLIVER, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Finis Raymond Price III, DeCAMILLIS & MATTINGLY, Louisville, Kentucky, for Appellant. Douglas C. Ballantine, STOLL KEENON OGDEN, Louisville, Kentucky, for Appellee. **ON BRIEF:** Finis Raymond Price III, DeCAMILLIS & MATTINGLY, Louisville, Kentucky, for Appellant. Douglas C. Ballantine, Justin D. Clark, STOLL KEENON OGDEN, Louisville, Kentucky, for Appellee.

---

**OPINION**

---

    BOYCE F. MARTIN, JR., Circuit Judge. This case is a contract dispute between Mike Smith, a thoroughbred jockey, and Shabtai Steve Adika, his former agent. Adika seeks a portion of the yearly stud fee from the stallion Unbridled's Song. The district court dismissed the case because it was time-barred by the applicable statute of limitations. Adika appeals that decision. For the following reasons, we affirm.

---

[*]The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

I.

Adika operated as the agent for Smith, a thoroughbred jockey, from 1989 to 1999.  As is customary in this business, no written contract ever existed between the two.  The two men worked from an oral contract in which Adika would receive thirty percent of all of Smith's earnings.  Smith fired Adika in November 1999.

The thoroughbred horse Unbridled's Song retired in 1997 following a successful racing career.[1]  At that time, Ernie Paragallo, the owner of Unbridled's Song and Paraneck Stable, entered into a Syndicate Agreement that, *inter alia*, granted Smith a portion of the yearly stud fee as appreciation for his role in the success of the horse.  Adika was not a party to the Syndicate Agreement.  Unbridled's Song stood at stud from 1997 to 2005, and Smith was paid a portion of each year's fee.

On May 5, 2005, Adika filed this lawsuit in the Circuit Court of Jefferson County, Kentucky, alleging that he was owed his thirty percent of the yearly stud fee granted to Smith beginning with the 1997 payment.  Smith removed the action to federal court on the basis of diversity jurisdiction.  On November 7, the district court dismissed the action against Smith as being time-barred by the statute of limitations.  Adika filed a Notice of Appeal to this court on December 30.

II.

We review a Rule 12(b)(6) dismissal for failure to state a claim de novo.  *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).  "Under Rule 12(b)(6) 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  In reviewing a 12(b)(6) dismissal, this court must accept all facts in the complaint as true and construe the complaint liberally in favor of the plaintiff.  *Id.*

The parties agree that the only contract between Smith and Adika was the original oral contract which defined their jockey-agent relationship.  Both parties have stipulated that the appropriate law to apply in this diversity case is that of the Commonwealth of Kentucky.  The Kentucky statute of limitations on actions accruing from a contract not in writing is five years.  K.R.S. § 413.120.  Adika filed his suit against Smith in May 2005, five years and six months after Adika and Smith's relationship was terminated.  Based on this time delay, the district court held that the suit was time-barred by the statute of limitations.

Adika points to several reasons why this holding by the district court is incorrect.  First, he claims that his right to a portion of the stud fee of Unbridled's Song is not contingent on the agent relationship between him and Smith.  Second, Adika argues that the statute of limitations did not begin to run in November 1999 as held by the district court.

As proof that the stud fee was not contingent on the agent relationship, Adika relies on a letter from Ernie Paragallo, written in April 2004.  This letter states that "[t]he purpose and understanding was for both the Jockey and his Agent, under their normal business percentage, to earn the yearly gifted stud fee."  Adika argues that this letter demonstrates he was entitled to the stud fee for the entirety of Unbridled's Song's stud career, separate and distinct from his agent relationship with Smith.  Adika argues that the letter, by specifically mentioning "Agent," demonstrates that he was entitled to a portion of the stud fee without relying on the agent

---

[1]Unbridled's Song had five first place finishes, including the Breeder's Cup Juvenile and the Florida Derby, and three second-place finishes in twelve starts, yielding a career earnings of $1.3 million.  "Taylor Made Stallions - Unbridled's Song," http://www.taylormadestallions.com/UnbridledsRace.html?a=10089.

relationship. If the stud proceeds were to be paid because of the agent relationship, the gift would have been given solely to Smith, and Adika would have been entitled, through the agent relationship, to his thirty percent portion of the stud fee.

Adika's reliance on the letter and the subsequent arguments based on that letter must fail. Even if we are to assume that it was in fact Paragallo's intent in 1997 to make a gift to Adika, this intent does not impose any obligation upon Smith. Rather, any duties owed by Smith to Adika were contained in their oral agency contract. Unfortunately for Adika, he filed his complaint more than five years after Smith terminated their agency arrangement, at which point the statute of limitations had expired.

Even if we accept Adika's argument that the letter is sufficient proof that Paraneck Stable granted him a fee, the language of the letter specifically states that the stud fee given to "Agent" was to be given under their "normal business percentage." It appears that the letter demonstrates that the stud fees were to be given to Adika only as a portion of Adika and Smith's normal business practice and, therefore, through their agent relationship. The letter does not remove the stud fee transaction from the ambit of the agent relationship. Furthermore, even assuming, as Adika argues, that the stud fee was not a part of the agent relationship, Smith would not be a proper party to this action. If the stud fee grant was separate from the agent relationship, then the duty to pay Adika would fall to Paraneck Stable. Adika cannot argue that Smith has been paid the entire portion of the stud fee and that Smith was supposed to pay him thirty percent of those proceeds without relying on the agent relationship. Without reference to the oral contract defining their agent relationship, it is wholly unclear where any such duty for Smith would have originated.

Adika's second argument challenging the district court's dismissal of his claim is that the statute of limitations did not begin to run when the agent relationship ended in November 1999, because every year Smith has failed to deliver Adika's portion of the stud fee created a new cause of action. Therefore, Adika argues that the statute of limitations only bars his recovery for the years 1997 to 1999, that is, any years beyond five years prior to his filing this lawsuit on May 5, 2005. Adika relies on *Commonwealth of Kentucky v. Polk*, 75 S.W.2d 761, 764 (Ky. 1934), and *McKee v. Lamon*, 159 U.S. 317, 322 (1895), to support his claim that a new cause of action arose each year.

Upon closer inspection, each of these cases involve the relationship between a bailor and a bailee. "[A] bailment is created by contract," *Jones v. Hanna*, 814 S.W.2d 287, 289 (Ky. App. 1991), and is comprised of the delivery of an item "in trust for some special object or purpose," *Polk*, 75 S.W.2d at 764. Adika, therefore, appears to be arguing that a bailment was created between himself and Smith, namely that Smith would hold Adika's money in the stud fee for him, for delivery at a later date. Generally, in order for a bailment to exist,

> [t]here must . . . be some affirmative act or conduct of the party sought to be charged as bailee; delivery and acceptance must be present for a bailment to arise. That is, absent some form of *understanding between the parties*, the formation of an implied-in-fact bailment contract cannot take place. There must be a substantive foundation in the acts or conduct of the party sought to be bound on which an implied contract of bailment can rest.

8A Am. Jur. 2d Bailments § 37 (citations omitted, emphasis added).

In the case at bar, there is nothing in the record to support the existence of a contract creating a bailment, nor any explicit or implicit understanding between them that Smith would hold the yearly stud fees "in trust" for Adika. The Syndicate Agreement between Paraneck Stable and Smith does not evince any intent on the part of Smith to remit a portion of his fees to Adika, and as such, the Agreement cannot be read to create a bailment in which Smith would serve as a bailee for Adika.

The only evidence Adika offers to support his claim that a bailment was created is the letter from Paragallo on behalf of Paraneck Stable. A third party's understanding of the relationship between Smith and Adika, written seven years after the fact, does nothing to demonstrate that Smith was on notice that he acted as a bailee for Adika.

Adika's argument that a new cause of action accrued each year may have been meritorious had he been able to demonstrate that his agency contract with Smith was severable. For a contract that is continuous in nature, the statute of limitations does not begin to run until the contract's termination. On the other hand, for a contract that is severable in nature, the statute of limitations begins to run on each particular part of the contract when a party breaches that part. *See, e.g.*, *Allapattah Servs. v. Exxon Corp.*, 188 F.R.D. 667, 680 (S.D. Fla. 1999) (a well-written district court opinion stating this proposition in the context of a sales contract), *aff'd*, 333 F.3d 1248 (11th Cir. 2003), *aff'd sub nom. Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546 (2005). In the present case, the contract at issue is an oral agency contract providing that Adika would receive 30% of Smith's earnings while Adika worked as his agent. Adika does not produce any evidence or documentation demonstrating that it was the parties' intention to make this contract severable in nature. Rather, it appears to be an indivisible agency contract that was terminated in its entirety in November 1999. Therefore, the statute of limitations expired in November 2004, and Adika's claim is thus time-barred.

The decision of the district court is affirmed.