NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0779n.06

No. 08-1411

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Dec 10, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| ARTHUR SIMPSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| PATRICIA L. CARUSO, et al., | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |

Before:  MARTIN and SUTTON, Circuit Judges; REEVES, District Judge.[*]

DANNY C. REEVES, District Judge.  Appellant Arthur Simpson appeals the district

court's determination that Simpson's primary claims were being asserted under 42 U.S.C. § 1983

rather than 28 U.S.C. § 2254.  He further challenges the district court's dismissal of his entire

complaint pursuant to 42 U.S.C. § 1997e(c).  Because we conclude that Simpson's complaint

contains both a claim for monetary damages as well as a claim for habeas relief, and because one

of his claims is sufficient to survive dismissal upon initial review, we **REVERSE** the district

court's dismissal of that claim and **REMAND** this matter for further proceedings.  However, we

---

[*]     The Honorable Danny C. Reeves, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

-1-

**AFFIRM** dismissal of the remaining claim as failing to state a claim upon which relief may be granted.

**I.**

Simpson escaped from custody while being transported between facilities. At the time of his escape, Simpson was serving a twenty to forty year sentence for armed robbery. During his escape, Simpson shot and killed a deputy. Simpson eluded capture and eventually made his way to London, England. While in England, Simpson was arrested and convicted of armed robbery and possessing a firearm with intent to commit an indictable offense. Simpson's true identity was discovered through a fingerprint exchange program.

William Delhey, Prosecuting Attorney for Washtenaw County, Michigan, sought Simpson's extradition through Joseph Clarke of the British Consulate. Simpson alleges that a key telephone conversation regarding his extradition occurred between Delhey and Clarke on June 16, 1978. He points to a portion of the conversation as proof that assurances were given to the British government that he would only serve twenty-three years for a life sentence if extradited.

> Joseph Clarke: What happens in practice in Michigan in cases where a prisoner is convicted of first degree murder, does he stay inside for life or does he have license or release or parole ever take place?
>
> William Delhey: No. There is no parole or release. The only way that he can be released from confinement is by commutation of sentence by the elected governor of the State of Michigan.

> Joseph Clarke: If release is possible, could any indication be given as to how long Simpson might be expected to serve?

> William Delhey: I find this somewhat difficult to answer. I do know that there are many commutation[s] of sentences. I did confer with Mr. Brown at the Department of Corrections and he advised me that the average term in confinement of first degree murder prisoner is 23 years.

On July 20, 1978, after completing his prison sentence in England, Simpson was extradited to Michigan for prosecution on the first degree murder charge. He was later found guilty and received a life sentence.

Simpson's complaint contains two claims against current and former directors, wardens, and employees of the Michigan Department of Corrections seeking monetary and injunctive relief. In support of his first claim, Simpson alleged that the defendants are violating a state court order and Article XII of the Treaty on Extradition Between the United States and the Government of the United Kingdom of Great Britain and Northern Ireland ("Extradition Treaty"), Jan. 21, 1977, 28 U.S.T. 227, by forcing him to serve an armed robbery sentence and an escape sentence for which he was not extradited. Simpson also claims that the state is using this information against him in parole eligibility and classification reports. In support of his second claim, Simpson asserted that the defendants violated Article IV of the Extradition Treaty by refusing to fulfill the assurance made during extradition that he would serve only twenty-three years if convicted of first-degree murder.

The complaint states, "[t]his is a civil action . . . seeking damages, with motions for a judgment of contempt and writ of habeas corpus." The district court found *sua sponte* that "a

fair reading of the complaint shows that plaintiff is attempting to assert a federal civil rights claim against defendants." The district court further determined that,

> [w]hile appropriately construed as a civil rights case, the gravaman [sic] of plaintiff's complaint is that he challenges the validity of his continued imprisonment. To that extent, the complaint fails to state a claim upon which relief may be granted under § 1983. . . . As applied to plaintiff, if plaintiff were to prevail on his treaty violation and denial of commutation claims, the validity of his continued confinement would be called into question. . . . Should plaintiff wish to challenge the constitutionality of his conviction, the proper procedure is to file a habeas case under 28 U.S.C. § 2254.

Simpson filed a timely appeal, arguing that he did not file his complaint under § 1983. His appeal was referred to a panel of this Court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. The panel held that Simpson had raised a substantial issue concerning whether his case should have been construed as a petition for a writ of habeas corpus and granted his motion for leave to proceed on appeal *in forma pauperis*.

**II.**

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 1331. We review a district court's legal conclusions *de novo* and its findings of fact under the clearly erroneous standard. *Great Lakes Exploration Group, LLC v. Unidentified Wrecked*, 522 F.3d 682, 687 (6th Cir. 2008) (citing *D.A.B.E., Inc. v. City of Toledo*, 393 F.3d 692, 695 (6th Cir. 2005)). This Court reviews *de novo* the district court's interpretation that the complaint is a claim under 42 U.S.C. § 1983. *See id.* We also review *de novo* the district court's dismissal of Simpson's complaint. *See Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009).

Simpson's complaint challenges the duration of his incarceration and seeks monetary damages based on assurances given to British government officials during the extradition process. A challenge to the duration of incarceration falls within the scope of a habeas corpus petition, while a request for money damages is evaluated under 42 U.S.C. § 1983. *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam). The preliminary statement of the complaint specifically states "[t]his is a civil action . . . seeking damages, with motions for a judgment of contempt and writ of habeas corpus." The jurisdictional paragraph asserts "[t]his court has jurisdiction over plaintiff's claims of the treaty violations and writ under the Supremacy Clause U.S.C.A. Art. VI Cl. 2, 28 U.S.C. §[§] 1331(a) and 1651. The treaty in question, TIAS 8468[,] is a 'Self Executing' treaty." *Id*. The complaint does not cite § 1983. *Id*. Simpson also filed a separate motion for a writ of habeas corpus which he referenced in his complaint. *Id*. The district court found that "the gravaman (sic) of plaintiff's complaint is that he challenged the validity of his continued imprisonment." However, the district court ruled that "a fair reading of the complaint shows that plaintiff is attempting to assert a federal civil rights claim against defendants." The district court further stated that, "Should plaintiff wish to challenge the constitutionality of his conviction, the proper procedure is to file a habeas case under 28 U.S.C. § 2254."

The district court was correct when it concluded that the most significant part of Simpson's complaint was his challenge to the validity of his continued imprisonment based on a treaty. A district court shall entertain an application for a writ of habeas corpus on behalf of

a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or *treaties* of the United States. 28 U.S.C. § 2254 (2009) (emphasis added). Given that Simpson's complaint (i) failed to cite § 1983 and instead cited the All Writs Act as a jurisdictional basis, (ii) referred to his motion for a writ of habeas corpus, and (iii) requested immediate release as relief, the district court erred in construing Simpson's complaint as a § 1983 action rather than a habeas petition. This conclusion is also supported by the fact that the proper procedure for challenging his confinement as violating an extradition treaty is a habeas petition; and that *pro se* complaints are to be construed liberally, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).

The district court then dismissed Simpson's entire complaint, finding that it failed to state a claim upon which relief may be granted under § 1983. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The court "must accept all facts in the complaint as true and construe the complaint liberally in favor of the plaintiff." *Adika v. Smith*, 466 F.3d 503, 505 (6th Cir. 2006). A district court's decision may be affirmed on any grounds supported by the record, even though they may be different from the grounds relied on by the district court. *City of Management Corp. v. U.S. Chemical Co., Inc.*, 43 F.3d 244, 251 (6th Cir. 1994).

Simpson's complaint contains two claims. His first claim alleges that the defendants are violating a state court order and Article XII of the Extradition Treaty by forcing him to serve an armed robbery sentence and an escape sentence for which he was not extradited and that the defendants are using this information against him in parole eligibility and classification reports. Article XII of the Extradition Treaty prevents an extradited party from serving time for any offense other than the extradited offense unless an exception is met. *See* Extradition Treaty, Jan. 21, 1977, 28 U.S.T. 227. Accepting the allegations as true, Simpson's claim is not obviously frivolous, and we therefore remand it to the district court for consideration in the first instance.

Simpson asserts in his second claim that the defendants violated Article IV of the Extradition Treaty by refusing to fulfill assurances that he would serve only twenty-three years if convicted of first-degree murder. According to the complaint, these assurances stem from a telephone conversation that allegedly occurred on June 16, 1978, between the state prosecutor William Delhey and Joseph Clarke of the British Consulate. Delhey told Clarke that "[t]here is no parole or release [and] [t]he only way that [Simpson] can be released from confinement is by commutation of sentence by the elected governor of the State of Michigan." Delhey further advised that "the average term in confinement of first degree murder prisoner is 23 years." Simpson misconstrues this conversation as an assurance to British authorities that his life sentence would be limited to twenty-three years. In fact, Delhey specifically states that only the governor of Michigan may reduce Simpson's sentence. Therefore, accepting all facts in the complaint as true, Simpson can prove no set of facts in support of this claim which would entitle

him to relief.  Accordingly, we affirm the district court's dismissal of Simpson's second claim on other grounds supported by the record.

### III.

We **AFFIRM** dismissal of Simpson's claim that the defendants violated Article IV of the Extradition Treaty by refusing to fulfill assurances that he would serve only twenty-three years if convicted of first-degree murder.  However, because we conclude that Simpson's remaining claim was improperly characterized by the district court, and because that claim may have merit, we **REVERSE** dismissal of that claim and **REMAND** this matter for further proceedings consistent with this opinion.