NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0315n.06

No. 09-5480

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**May 12, 2011**
LEONARD GREEN, Clerk

YOUNG BOK SONG,

      **Plaintiff-Appellant,**

v.

BRETT M. GIPSON, Detective; JOHN DOE, I; JOHN
DOE, II, Police Officers in Nashville, Tennessee.

      **Defendants-Appellees.**

)
)
)
)
)
)
)
)
)
)
)
)

**ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE**

**O P I N I O N**

---

**BEFORE: MARTIN, NORRIS, and COOK, Circuit Judges.**

      **ALAN E. NORRIS, Circuit Judge.** This appeal obliges us to re-examine the parameters

of the "liberal pleading" standard accorded to *pro se* litigants. Specifically, appellate *pro bono*

counsel contend that the district court erred when it failed *sua sponte* to re-characterize *pro se*

plaintiff's complaint, which was specifically styled a section 1983 action, as a petition for a writ of

habeas corpus. Counsel urges us to remand the matter with instructions that the district court

reconsider the complaint as a habeas petition. For the reasons that follow, we decline this invitation

and affirm the judgment of the district court.

**I.**

      Plaintiff Young Bok Song is a Korean national who relocated to the United States in 1994.

On September 17, 2004, a Tennessee jury convicted him of seven counts of rape of a child and four

counts of aggravated sexual battery. *State v. Song*, No. M2004-02885-CCA-R3-CD, 2005 WL 2978972 at *1 (Tenn. Crim. App. Nov. 4, 2006). He received a sentence of sixty-five years of incarceration. *Id.* The opinion of the Tennessee Court of Criminal Appeals contains an extensive factual recitation, which does not affect the resolution of this appeal. *Id.* at *1-5. Suffice it to say that plaintiff was convicted of repeatedly raping the daughter of the woman with whom he was living. These sexual assaults spanned several years and culminated when the victim was twelve years old.

Plaintiff appealed his conviction throughout the courts of Tennessee, including a petition for post-conviction relief. *Song v. State*, No. M2007-00404-CCA-R3-PC, 2008 WL 624926 (Tenn. Crim. App. Mar. 4, 2008). In his post-conviction petition plaintiff alleged that his trial counsel rendered ineffective assistance by not retaining an interpreter. *Id.* at *8. The Court of Criminal Appeals rejected that claim and affirmed the conviction.

On March 5, 2009, plaintiff filed a *pro se* complaint in federal district court. Plaintiff used a pre-printed form styled, "Complaint for Violation of Civil Rights (42 U.S.C. § 1983)." Section IV of this form requires a statement of the claims. Plaintiff asserted that his English was limited and requested the appointment of a "certified" interpreter or translator. He also submitted a handwritten "Korean Complaint."

The named defendants included Detective Brett Gipson of the Nashville police department and two unnamed "John Doe" police officers who assisted in the transportation of plaintiff from Fayetteville, North Carolina, where he was arrested, to Nashville, where the charges had been filed. Plaintiff sought relief in the form of two million dollars from Detective Gipson and one million each

from the John Doe defendants. Attached to the complaint are all manner of documents, ranging from

the Universal Declaration of Human Rights to the incident report submitted by Detective Gipson.

The district court responded by ordering plaintiff to submit an English-language complaint

within twenty days. Plaintiff then filed motions for appointment of counsel and an interpreter, as

well as a motion construed as a motion for an extension of time. The district court granted a 30-day

extension but denied appointment of counsel or an interpreter.

The following month, plaintiff filed an "English Composition of the Complaint by the Order

of the Court." Like his first complaint, it included numerous attachments. This document does not

explicitly invoke section 1983. Plaintiff asserts his rights under the Vienna Convention on Consular

Relations. The complaint contains the following general allegations:

> I was arrested for what I did not commit, 2003/11/18, when I was 40 years
> old. But In America I just was like 10 years old boy in English, in America Culture,
> and in America Law System, and so far.

> My arresting was at North Carolina.

> After arresting, around a week later I was moved to Tennessee/Nashville.
> That time I met two Nashville Police. They did not tell me their name so I don't
> know. Later I knew that they are Police in Fusitive [sic] Section in Nashville. They
> did not tell me about my Rights or Miranda or any. They did not tell me about the
> Vienna Convention on Consular Relations Notification. They hand cup [sic] me in
> back and they shackle my legs, and put me in the back of the car, and drive almost
> 10-15 hours, and put me in Jail at Tennessee/Nashville (C.J.C.?). And after that I
> have long-tough-enslavement.

> Other than this two Police, I found later, that there was one more police who
> control all of this. He was Det. Brett M. Gipson. He knew from the beginning of this
> case my cell-phone #. But he never even try to call me to listen my story he just
> issued the Indictment and made me a refusee, escapee, or some. And he made false
> criminal record for me and issued the Indictment easily. And all they knew that I was
> Korean Foreigner, and all they knew that I was a minister they never try to talk to me

before issue the Indictment. And they never inform me about the Vienna Convention Notification Matter.

Because of their violation I was Violated my Fundamental Human Rights to Defend from the very beginning.

I am not talking about some special rights. But I am just talking about My-already existing-God-given-Fundamental-Human-rights to defend myself properly or in meaningful way.

Later in the complaint, plaintiff asserts that his lack of English language competency, coupled with the failure of the trial court to provide an interpreter, compromised his defense.

Four days after the amended complaint was filed, the district court dismissed it *sua sponte* for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2). The crux of the district court's reasoning is the following:

In order for the plaintiff to obtain § 1983 relief for an allegedly unconstitutional conviction or confinement, he must first prove that the conviction or confinement has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477 (1994). The plaintiff has offered nothing to suggest that his conviction has already been declared invalid. Therefore, the plaintiff's claims are not yet cognizable in a § 1983 action.

**II.**

Appellate counsel contend that the gravamen of the complaint and the procedural posture of the case indicate that plaintiff intended to seek a writ of habeas corpus, not to vindicate his civil rights through a section 1983 action. In support of that contention, they point to several considerations. First, plaintiff exhausted all available appeals of his conviction in the courts of Tennessee thereby making his habeas petition ripe for filing. Second, his amended complaint

requests a new trial as a form of relief; a new trial is not a remedy available under section 1983 but is available in habeas corpus. Third, *pro se* plaintiffs are subject to a less stringent pleading standard. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Fourth, plaintiff's complaint was filed within the one-year statute of limitations that applies to habeas petitions, 28 U.S.C. § 2244(d); because the district court did not treat it as a habeas petition, however, plaintiff is now precluded by the statute of limitations from filing a habeas petition. If nothing else, counsel contend that justice and equity require that plaintiff be afforded an opportunity to pursue habeas relief.

Counsel direct us to cases in which the trial court's decision to re-characterize a *pro se* filing as a habeas petition has been upheld provided that the prisoner is warned that such a characterization may preclude a subsequent petition. For instance, this circuit held that a district court could treat a *pro se* federal prisoner's motion "to dismiss for lack of territorial jurisdiction" as a § 2255 motion to vacate. *In Re Shelton*, 295 F.3d 620, 621 (6th Cir. 2002). However, because the district court did not inform the prisoner of its intention to do so, a subsequent § 2255 motion was not a barred by the statutory limitation on successive motions. *Id.* at 622. The United States Supreme Court reached the same conclusion the next year. *Castro v. United States*, 540 U.S. 375, 377 (2003). The Court noted that "[f]ederal courts sometimes will ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category." *Id.* at 381. When a district court does so, however, it must "notify the *pro se* litigant . . . that this recharacterization means that any subsequent § 2255 motion will be subject to the restrictions on 'second or successive' motions, and provide the litigant an opportunity to withdraw the motion or to amend it so that it contains all the § 2255 claims he believes he has." *Id.* at 383. Both *Shelton*

and *Castro* involved federal habeas claims. However, this circuit has applied this rule in the context

of a habeas petition from a state conviction. *Martin v. Overton*, 391 F.3d 710, 713 (6th Cir. 2004).

While these cases make clear that the district court *may* on its own initiative re-characterize

a *pro se* pleading provided it gives notice to the litigant of potential adverse collateral consequences,

they do not stand for the proposition that a district court must *sua sponte* re-characterize a motion

or complaint. Defense counsel point to an unpublished decision from this court, *Simpson v. Caruso*,

355 F.App'x 927 (6th Cir. 2009), for the broad proposition that a district court must parse all claims

in the interest of fairness and the underlying policy of avoiding serious consequences to the

petitioner. In *Simpson*, the district court dismissed the prisoner's complaint *in toto* as a section 1983

action even though it made mention of habeas corpus. This court affirmed that re-characterization

as to one claim but reversed and remanded a second claim that sounded in habeas because it invoked

unlawful custody in violation of an extradition treaty:

> Given that Simpson's complaint (i) failed to cite § 1983 and instead cited the All Writs Act as a jurisdictional basis, (ii) referred to his motion for a writ of habeas corpus, and (iii) requested immediate release as relief, the district court erred in construing Simpson's complaint as a § 1983 action rather than a habeas petition. This conclusion is also supported by the fact that the proper procedure for challenging his confinement as violating an extradition treaty is a habeas petition; and that *pro se* complaints are to be construed liberally, *see Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam).

*Id.* at 930.

While *pro bono* counsel have done a commendable job advocating on behalf of their client,

the line of cases, including *Simpson*, that they rely upon are readily distinguishable. Unlike the

petitioner in *Simpson*, plaintiff cited section 1983 in his original complaint, sought monetary

damages, and sued individual police officers who had little or nothing to do with his conviction or current incarceration. Moreover, in every other case relied upon by plaintiff, the district court re-characterized the complaint or motion; here, the district court simply treated the complaint as it was originally styled. Finally, *Caruso* and related cases are primarily concerned with protecting *pro se* litigants from the adverse consequences of judicial re-characterization – specifically respecting successive habeas petitions. The adverse consequence in this case is that plaintiff has forfeited his ability to file a habeas petition within the statute of limitations because he ill-advisedly filed a section 1983 action instead. That is truly unfortunate, but it does not result from an action taken by the district court. To hold in favor of plaintiff would impose an affirmative duty on district courts to scrutinize *pro se* complaints to determine whether there is a cause of action other than the one pleaded by the plaintiff that is more advantageous to him. While trial courts are already instructed to construe *pro se* pleadings liberally, *Haines, supra,* and to warn plaintiffs of adverse collateral consequences before re-characterizing those pleadings, *Caruso, supra,* we decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.

**III.**

The judgment of the district court is **affirmed**.