## SWANSON et al. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 5280.

Circuit Court of Appeals, Seventh Circuit. April 10, 1935.

652

Kix Miller, Baar & Hoffman (by Arnold R. Baar), of Chicago, Ill., for petitioners.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and A. F. Prescott, Sp. Assts. to Atty. Gen., for respondent.

Before EVANS, SPARKS, and FITZ-HENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

This is a petition for review of decisions of the United States Board of Tax Appeals affirming the decision of the Commissioner of Internal Revenue that deficiencies of income tax were due from the Lake View Land Association. The Board found that the case is substantially the same as that of Joseph E. Swanson et al., Trustees of the Fullerton Parkway Land Trust v. Com'r, 29 B. T. A. 1123, and is governed by the decision in that case. The only issue on this review is whether the income of the Lake View Land Association for the years 1925 and 1926 is subject to tax as the income of a trust under section 219 of the Revenue Act of 1926 (26 USCA § 960 note) or as an "association" under section 2 (a) (2) of that act (26 USCA § 1262 (a) (2).

Joseph E. Swanson and Ralph C. Otis were the owners of a three-story apartment building containing nine apartments. On June 1, 1915, they entered into a trust agreement for the purpose of carrying the title to the real estate. The first trustees were Ralph C. Otis, Joseph E. Swanson, and Allen G. Mills. In 1926, James Otis succeeded his father as trustee.

Under the trust agreement, the trustees were given the complete management and control of the property, to exchange, reconstruct, remodel, sell, or improve at their discretion or to borrow money secured by the property. They were authorized to rent suitable quarters for the transaction of the business of the trust and employ such assistants as they required. The agreement provided for the issuance of "receipts" to evidence the interests of the beneficiaries, representing 1,000 shares at the par value of $100 each. It was provided that the receipts were evidences of the ownership of personal property and not real estate. They might be transferred by assignment. Originally, one-half of the shares were issued to Otis and one-half to Swanson, who later transferred their interests to their wives, who owned the shares during 1925 and 1926. The agreement provided that the trust could sue and be sued; that neither the trustees nor the beneficiaries should be personally liable, and that all persons dealing with the trustees must look only to the property of the trust; that it should be terminated at the expiration of twenty years after the death of the last survivor of certain named persons or by the trustees in their discretion at any time before the expiration of the twenty years by selling all the property held by them as such and distributing the net proceeds of such sale. The trust had succession and was not terminated by the death of a trustee or beneficiary.

The case differs from that of Joseph E. Swanson, et al., Trustees of the Fullerton Parkway Land Trust, in that the Lake View Land Association acquired a complete building, whereas the Fullerton Parkway Land Trust purchased a piece of vacant property and erected the building upon it.

The trustees of the Lake View Land Association never assembled in formal meetings, never adopted resolutions or took formal action with reference to the affairs of the property, kept no minute book, had no by-laws. They elected no officers and no so-called board of directors.

From the above analysis of the agreement which created Lake View Land Association, the conclusion is inescapable that it was a corporation in everything but the name and seal and the fact that its business was carried on without holding formal meetings, adopting resolutions, and keeping minutes. A group cannot organize and carry on business and escape taxation as a corporation on so slight a distinction.

In Tyson (Chicago Real Estate Trust) v. Commissioner, 68 F.(2d) 584, 587, this court said:

"That the organization of the trustees was of a very loose and informal character we think is not sufficient to take them out of the classification contemplated by the administrative regulations cited. Even though no formal meetings of the trustees were held, they had adopted a regular practice for the administration of their trust. * * * It is true that neither the trustees nor the receipt holders ever drew up a code of rules or by-laws for the government of the trust, but such action seems entirely unnecessary in view of the comprehensive nature of the trust agreement under which they were organized in the first place. We think that these facts are sufficient to warrant our classifying petitioners as a quasi-corporate organization in form and procedure and as such taxable as a corporation."

Petitioners contend that they were not carrying on a business enterprise, but were merely serving to hold the title to the real estate. It is true that the active management of the property seems to have been left to Joseph E. Swanson, one of the trustees who was also a member of a real estate firm known as Willoughby & Company. Ralph C. Otis had his office in the same building and frequently consulted with Swanson in regard to the management of the trust property. The question therefore resolves itself into this: Can the trustees avoid the conclusion that they are carrying on a business enterprise by turning the management of their affairs over to one of their number as a partner in another enterprise which handles the affairs of the association with the advice of the other trustees? We believe the answer to be that the trustees in this case were an association carrying on a business enterprise personally and through their agents and employees.

Affirmed.