RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0021p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MARLENA H. KOTTMYER and ROBERT D.
KOTTMYER,

　　　　　　　　　　*Plaintiffs-Appellants,*

　　　　　*v.*

AIMEE MAAS; CINCINNATI CHILDREN'S HOSPITAL
MEDICAL CENTER; HAMILTON COUNTY BOARD OF
COMMISSIONERS, and DEBBIE AYER,

　　　　　　　　　　*Defendants-Appellees.*

No. 05-3033

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 03-00412—Susan J. Dlott, District Judge.

Argued: December 8, 2005

Decided and Filed: January 18, 2006

Before: MERRITT, MARTIN, and COLE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** John H. Metz, Cincinnati, Ohio, for Appellants. James A. Comodeca, DINSMORE &
SHOHL, Cincinnati, Ohio, Mark C. Vollman, Michael G. Florez, HAMILTON COUNTY
PROSECUTOR'S OFFICE, Cincinnati, Ohio, for Appellees. **ON BRIEF:** John H. Metz,
Cincinnati, Ohio, for Appellants. James A. Comodeca, Mark L. Silbersack, Margaret Maggio,
DINSMORE & SHOHL, Cincinnati, Ohio, Mark C. Vollman, Michael G. Florez, HAMILTON
COUNTY PROSECUTOR'S OFFICE, Cincinnati, Ohio, for Appellees.

_____

## OPINION

_____

　　BOYCE F. MARTIN, JR., Circuit Judge. Marlena and Robert Kottmyer appeal the district
court's order denying their motion for leave to amend their complaint and granting the defendants's
motions to dismiss in this section 1983 case. For the reasons stated below, we AFFIRM the district
court's decision.

1

I.

On May 15, 2001, Marlena gave birth to the Kottmyers's daughter, Arianna Marie Kottmyer, at Bethesda Hospital. Arianna was born with significant brain damage, and on May 17, 2001 she was admitted to Cincinnati Children's Hospital Medical Center. Due to Arianna's severe brain damage, a hospital social worker, Aimee Maas, was assigned to Arianna's case. The Kottmyers had several meetings with hospital staff regarding the seriousness of Arianna's brain damage. Following one of these meeting, Maas decided that Marlena was a danger to Arianna and that Marlena should not be permitted to take Arianna home. Maas informed Marlena that if she took Arianna home and anything happened to Arianna, Marlena would be accused of murder. Maas then contacted the Hamilton County Department of Jobs and Family Services which assigned social worker Debbie Ayer to initiate an investigation of the Kottmyers.

During the investigation, Arianna was transferred to another medical facility, St. Joseph's Home. Hamilton County continued its investigation of the Kottmyers despite receiving information from the medical staff treating Arianna that there was no basis for investigating the Kottmyers. The Kottmyers alleged that they were treated "like criminals" and were constantly watched and monitored while at the hospital. After conducting an investigation of the Kottmyers for several months, the Hamilton County Department of Jobs and Family Services Children's Services Appeal determined on January 31, 2002, that the Kottmyers were not a danger to Arianna. Arianna died several months later on March 25, 2002.

The Kottmyers then filed suit against Maas, Cincinnati Children's Hospital, Hamilton County, and Ayer under 42 U.S.C. § 1983 alleging that the defendants violated the Kottmyers's "protected Constitutional rights." Maas and Cincinnati Children's Hospital filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted this motion on the grounds that the Kottmyers failed to "make clear of which right secured by the Constitution Maas and CCHMC deprived them." Ayer and Hamilton County then filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(c). In response the Kottmyers suggested that any infirmities in their complaint could be remedied by permitting them to file an amended complaint. Based on these statements, the district court ordered that the Kottmyers be permitted to move to file an amended complaint. The Kottmyers then submitted a motion for leave to file an amended opinion along with a proposed amended complaint. The amended complaint recited further details regarding the original allegations, specifically focusing on the Kottmyers's exemplary parenting skills. Additionally, the amended complaint now alleged that "once the investigation [was opened by Hamilton County] plaintiffs were not permitted to take their baby home until Debbie Ayer would allow it."

On December 8, 2004, the district court issued an order denying the Kottmyers's motion for leave to file an amended complaint and granting Ayer's and Hamilton County's motion to dismiss. The district court denied the Kottmyers leave to file an amended complaint on the grounds that the Kottmyers's "proposed amended complaint does nothing to remedy the original failure to state a claim upon which relief can be granted." The district court granted Ayer's and Hamilton County's motion to dismiss for the reasons stated in its earlier order granting Maas's and Cincinnati Children's Hospital's motion to dismiss. The Kottmyers then filed this appeal.

II.

The Kottmyers's appeal alleges three errors by the district court. First, the Kottmyers allege that the district court erred in dismissing the complaint against Maas and Cincinnati Children's Hospital based on Rule 12(b)(6). Second, the Kottmyers assert that the district court erred in dismissing the complaint against Ayer and Hamilton County pursuant to Rule 12(c). Finally, the Kottmyers argue that the district court erred in denying their motion to amend their complaint on

the ground that their proposed complaint still failed to state a claim. We will address each claim of error in turn.

## A.

The Kottmyers allege that the district court erred in granting Maas's and Cincinnati Children's Hospital's motion to dismiss based on Rule 12(b)(6) because the Kottmyers allege that their complaint did state a section 1983 claim against Maas and Cincinnati Children's Hospital. We review de novo a district court's dismissal of a plaintiff's complaint for failure to state a claim under Rule 12(b)(6). *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 451 (6th Cir. 2003). Rule 12(b)(6) permits a district court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6) "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In considering whether to grant a defendant's motion to dismiss pursuant to Rule 12(b)(6) a district court must accept as true all the allegations contained in the complaint and construe the complaint liberally in favor of the plaintiff. *Miller v. Curie*, 50 F.3d 373, 377 (6th Cir. 1995). A district court need not, however, accept as true legal conclusions or unwarranted factual inferences. *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).

After reviewing the Kottmyers's complaint we agree with the district court that it failed to state a claim against Maas and Cincinnati Children's Hospital. In order to state a claim under section 1983, it must be established that (1) the conduct in controversy was committed by a person acting under color of law, and (2) the conduct deprived the plaintiff of a federal right, either constitutional or statutory. *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 930 (1982). The Kottmyers's complaint failed to allege facts indicating that Maas and Cincinnati Children's Hospital were acting under color of law when the alleged violation of the Kottmyers's federal rights occurred.

Nothing in the Kottmyers's complaint suggests that Maas or Cincinnati Children's Hospital are state actors except for the Kottmyers's allegation that "Defendant Cincinnati Children's Hospital Medical Center operates pursuant to licensing and authority of State and Federal governments," and the conclusory statement that defendants were acting under color of law at the time of the alleged constitutional violations. These allegations are insufficient to establish that Maas and Cincinnati Children's Hospital were state actors at the time of the alleged constitutional violations. First, the Kottmyers's mere conclusory statements that the defendants were acting under color of law is insufficient as we are not required to accept as true conclusory legal statements when determining whether a plaintiff has stated a claim under section 1983. *See Lillard v. Shelby County Board of Education*, 76 F.3d 716, 726-27 (6th Cir. 1996). More importantly, however, our precedent indicates that the mere fact that a hospital is licensed by the state is insufficient to transform it into a state actor for purposes of section 1983. *See Crowder v. Conlan*, 740 F.2d 447, 451 (6th Cir. 1984) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1975)) ("State regulation of a private entity, even if it is 'extensive and detailed,' is not enough to support a finding of state action."); *see also Lansing v. City of Memphis*, 202 F.3d 821, 830 (6th Cir. 2000). Thus, the allegations contained in the complaint are insufficient to establish that Maas and Cincinnati Children's Hospital were state actors at the time of the alleged constitutional violation. Therefore, the Kottmyers failed to state a section 1983 claim against Maas and Cincinnati Children's Hospital and the district court properly dismissed the complaint against them.

## B.

The Kottmyers second allegation of error is that the district court erred in dismissing their complaint against Ayer and Hamilton County for failure to state a claim. The standard of review applicable to motions for judgment on the pleadings pursuant to Rule 12(c) is also de novo. *RMI*

*Titanium Co. v. Westinghouse Electric Corp.,* 78 F.3d 1125, 1134 (6th Cir. 1996); *Scheid v. Fanny Farmer Candy Shops, Inc*, 859 F.2d 434, 436 n.1 (6th Cir. 1988). A Rule 12(c) motion for judgment on the pleadings for failure to state a claim upon which relief can be granted is nearly identical to that employed under a Rule 12(b)(6) motion to dismiss. *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001); *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). When ruling on a defendant's motion to dismiss on the pleadings, a district court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Zeigler v. IBP Hog Market, Inc.*, 249 F.3d 509, 512 (6th Cir. 2001) (citations omitted). The district court, however, need not accept as true legal conclusions or unwarranted factual inferences. *Lewis v. ACB Business Serv., Inc.,* 135 F.3d 389, 405 (6th Cir. 1998).

As noted above, in order to allege a section 1983 claim, the Kottmyers's complaint must assert that (1) Ayer and Hamilton County were acting under color of law and (2) that they violated the Kottmyers's constitutional or statutory rights. There is no question that Ayer and Hamilton County were acting under color of law. Thus, we must determine whether Ayer or Hamilton County violated the Kottmyers's rights. Given that the complaint and the Kottmyers's brief provide only sketchy outlines of their claims at best, it is difficult to determine the exact rights that the Kottmyers claim to be at issue. However, viewing the complaint and the brief in the light most favorable to the Kottmyers, we suspect that the complaint asserts that Ayer and Hamilton County infringed upon the Kottmyers's right to familial association without due process of the law.

Proceeding under that assumption, we construe the Kottmyers's argument to be that Maas and Cincinnati Children's Hospital violated their right to familial association in violation of procedural due process. There is no doubt that under the constitution, the parent-child relation gives rise to a liberty interest that a parent may not be deprived of absent due process of law. *See, e.g. Bell v. Milwaukee*, 746 F.2d 1205, 1243 (7th Cir. 1984); *Morrison v. Jones*, 607 F.2d 1269, 1276 (9th Cir. 1979). Moreover, the Supreme Court has repeatedly reaffirmed the existence of a constitutional right to the maintenance of a parent-child relationship. In *Lassiter v. Department of Social Services*, 452 U.S. 18, 27 (1981), the Court declared it "plain beyond the need for multiple citation" that a natural parent's "desire for and right to the companionship, care, custody and management of his or her children is an interest far more precious than any property right." In *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000) (plurality opinion of O'Connor, J.), the Supreme Court described "the fundamental right of parents to make decisions concerning the care, custody, and control of their children" as perhaps "the oldest of the fundamental liberty interests recognized by this Court." This right to familial association has been recognized by the Court and protected in numerous others cases. *See, e.g. Lehr v. Robertson*, 463 U.S. 248, 258 (1983); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982).

Although it has recognized this abstract fundamental liberty interest in family integrity, however, the Supreme Court has yet to articulate the parameters of this right. Nonetheless, what is clear is that the right to family integrity, while critically importantly, is neither absolute nor unqualified. *Martinez v. Mafchair*, 35 F.3d 1486, 1490 (10th Cir. 1994). The right is limited by an equaling compelling governmental interest in the protection of children, particularly where the children need to be protected from their own parents. *Myers v. Morris,* 810 F.2d 1437, 1462 (8th Cir. 1987). Governmental entities have a "traditional and transcendent interest" in protecting children within their jurisdiction from abuse. *Maryland v. Craig*, 497 U.S. 836, 855 (1990); *see also*, *New York v. Ferber*, 458 U.S. 747, 757 (1982) (stating that "the prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance"). Thus, "although parents enjoy a constitutionally protected interest in their family integrity, this interest is counterbalanced by the compelling governmental interest in the protection of minor

children, particularly in circumstances where the protection is necessary as against the parents themselves." *Wilkinson*, 182 F.3d at 104.

Having concluded that the right to familial association is circumscribed by the government's interest in protecting children from potential abuse, we must determine the right's applicability to this case. Namely, we must determine whether the right to familial association includes the right to be free from governmental investigation based on a potential risk of harm to the child. We conclude that the right to familial association is not implicated merely by governmental investigation into allegations of child abuse.

Applying the general right, numerous courts have recognized that the right to familial association is implicated by the killing of a child by a state agent. *See, e.g., Kelson v. City of Springfield*, 76 F.2d 651 (9th Cir. 1985); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1242-45 (7th Cir. 1984); *Mattis v. Schnarr*, 502 F.2d 588, 593-95 (8th Cir. 1984). These decisions rely on the notion that parents have a constitutionally protected liberty interest in the companionship and society of their children, which parents are permanently deprived of when their children are killed by a state actor. Thus, courts have concluded that under such circumstance a due process claim is cognizable under section 1983.

Similarly, courts have concluded that a parent's liberty interest in familial association is implicated where a child is removed from his or her parent's care and custody. Thus, a state agent must provide sufficient due process before terminating parental rights, *see Santosky v. Kramer*, 455 U.S. 745, 753 (1982), or before removing a child from his or her parent's custody, *see Ram v. Rubin*, 118 F.3d 1306, 1310 (9th Cir. 1997) (stating that a parent cannot be summarily deprived of custody of his or her child without notice and a hearing, except when the child is in imminent danger). These courts rely on the proposition that the constitution guarantees "that parents will not be separated from their children without due process of law except in emergencies." *Mabe v. San Bernardino County, Department of Public Social Services*, 237 F.3d 1101, 1107 (9th Cir. 2001) (citing *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)).

When discussing the constitutionally protected right to familial association, courts focus on the parental right of custody and control over their children. A parent is necessarily deprived of his or her right to custody and control of their child, either permanently or temporarily, when a child is removed from the home. A parent is permanently deprived of these rights where the child is killed by a state actor or parental rights are extinguished. Mere investigation by authorities into child abuse allegations without more, however, does not infringe upon a parent's right to custody or control of a child in the same manner. Thus, none of the relevant cases suggest that mere investigation by the government of potential harm to a child infringes upon the familial association. On the contrary, the First Circuit has explicitly stated that "[t]he right to family integrity clearly does not include a constitutional right to be free from child abuse investigations." *Watterson v. Page*, 987 F.2d 1 (1st Cir. 1993); *see also Doe v. Heck,* 327 F.3d 492, 520 (7th Cir. 2003).[1]

Based on the above precedent, we cannot conclude that Ayer's and Hamilton County's mere investigation of Maas's allegations of child abuse constitutes a violation of the Kottmyers's right to familial association. By itself the fact that Ayer and Hamilton County initiated an investigation into the allegations against Marlena is insufficient to violate the Kottmyers's right to familial association. The bulk of the Kottmyers's complaint provides no other details into Ayer's and Hamilton County's unconstitutional actions other than the claim that they investigated and harassed the Kottmyers. Without more, these facts are insufficient to establish that the Kottmyers's right to custody and

---

[1] This may be different if there is evidence that the investigation was undertaken in bad faith or with a malicious motive or if tactics used to investigate would "shock the conscience."

control over Arianna was interfered with by Ayer or Hamilton County. There is no allegation that Arianna was removed from her parents's custody, either temporarily or permanently, or that the Ayer or Hamilton County in any way interfered with the Kottmyers's right to custody, control and companionship of their daughter.[2] In sum, nothing in the Kottmyers's complaint suggests an encroachment by Ayer or Hamilton County that is sufficiently intrusive so as to constitute an interference with the Kottmyers's liberty interest.

## C.

The Kottmyers's final claim is that the district court erred in denying their motion to file an amended complaint. We generally review a district court's denial of a motion to amend for abuse of discretion. *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986). Where the district court based its denial of a motion to amend on the legal conclusion that a proposed amendment would not survive a motion to dismiss, however, this Court reviews the district court's decision de novo. *LRL Properties v. Portage Metro Housing Auth.*, 55 F.3d 1097, 1104 (6th Cir. 1995). Given that the district court's reason for denying the Kottmyers leave to amend their complaint was that the proposed amended complaint failed to cure any legal insufficiencies with regard to the Kottmyers's section 1983 claim, we apply a de novo standard of review.

Under Federal Rule of Civil Procedure 15(a), a district court should freely grant a plaintiff leave to amend a complaint "when justice so requires." Fed. R. Civ. Pro. 15(a). A district court may deny a plaintiff leave to amend his or her complaint, however, when the proposed amendment would be futile. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). We agree with the district court that the proposed amendment to the complaint would have been futile and we thus conclude that the district court properly denied the Kottmyers's motion for leave to amended their complaint.

The Kottmyers proposed amended complaint did add numerous factual allegations not contained in their original complaint. The proposed amended complaint alleged that Ayer was aware that the Kottmyers were good parents based not only upon her own observation of the Kottmyers's interactions with Arianna but also information provided by Arianna's pediatrician, who told the social worker that "there was no basis to assume that [Marlena] was anything but a loving and caring mother." These allegations, however, do nothing to further the Kottmyers's constitutional claims.

The only fact of even arguable legal significance was the complaint's clarification of its claim that the Kottmyers were informed that they were not permitted to take Arianna home without Ayer approval. As discussed above, however, the Kottmyers do not assert that they attempted to take Arianna home from the hospital much less that Ayer ever actually barred them from removing Arianna from the hospital. Based upon these factual allegations, we cannot conclude that the Kottmyers's proposed amendments to their complaint are sufficient to state a claim against any of the defendants. We therefore conclude that the district court properly denied the Kottmyers motion to amend.

## III.

For the reasons stated above, we AFFIRM the district court's judgment.

---

[2] The complaint alludes to a claim that the Kottmyers were informed that they would not be permitted to remove Arianna from the hospital until Ayers allowed. While in some circumstances this could be construed to interfere with parental custody of a child, in this case even reviewing the complaint in the light most favorable to the Kottmyers, no such inference is alleged. During oral argument, the Kottmyers's counsel stated that the complaint was not meant to allege that the Kottmyers were ever prevented from taking Arianna home or that they even ever attempted to remove Arianna from the hospital. Under these circumstances, this lone allegation is insufficient to state a claim upon which relief could be granted.