*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0204p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

SUZANNE KOLLEY, JENA KOLLEY, JOSEPH
KOLLEY, WILLIAM KOLLEY, and JOSEPH
KOLLEY, JR.,

        *Plaintiffs-Appellants*,

        *v.*

ADULT PROTECTIVE SERVICES, et al.,

        *Defendants-Appellees*.

No. 12-1283

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 4:10-cv-11916—Mark A. Goldsmith, District Judge.

Argued: January 24, 2013

Decided and Filed: August 5, 2013

Before: MARTIN, SUHRHEINRICH, and GIBBONS, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Nabih H. Ayad, NABIH H. AYAD & ASSOCIATES, P.C., Canton, Michigan, for Appellants. John G. Fedynsky, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees Adult Protective Services and Fincher. Drew W. Broaddus, SECREST WARDLE, LYNCH, HAMPTON, TRUEX, AND MORLEY, Troy, Michigan, for Appellees House, Murrell, and Holmes. Keith J. Lerminiaux, OAKLAND COUNTY CORPORATION COUNSEL, Pontiac, Michigan, for Appellee Neph. Heidi D. Hudson, ZAUSMER, KAUFMAN, AUGUST, CALDWELL & TAYLER, P.C., Farmington Hills, Michigan, for Appellees Schuster, MORC, Keefer, Antella, Giperich, Mathes, and Thomas **ON BRIEF:** Nabih H. Ayad, NABIH H. AYAD & ASSOCIATES, P.C., Canton, Michigan, for Appellants. Margaret A. Nelson, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees Adult Protective Services and Fincher. Drew W. Broaddus, SECREST WARDLE, LYNCH, HAMPTON, TRUEX, AND MORLEY, Troy, Michigan, for Appellees House, Murrell, and Holmes. Keith J. Lerminiaux, OAKLAND COUNTY CORPORATION COUNSEL, Pontiac, Michigan, for Appellee Neph. Heidi D. Hudson, Mark J. Zausmer, ZAUSMER, KAUFMAN, AUGUST, CALDWELL & TAYLER, P.C., Farmington Hills, Michigan, for Appellees Schuster, MORC, Keefer, Antella, Giperich, Mathes, and Thomas.

---

**OPINION**

---

BOYCE F. MARTIN, Jr., Circuit Judge.  This case arises out of an investigation by Oakland County Adult Protective Services into the family of Jena Kolley, a developmentally disabled nineteen-year-old, after Jena told her teachers on two occasions that her mother hit her.  The Kolleys brought suit against the individuals and organizations that took part in investigating Jena's allegations.  The district court dismissed the Kolleys' federal claims for failure to state a claim under Rule 12(b)(6) and refused to grant supplemental jurisdiction over the remaining state claims.  The Kolleys now appeal.  We **AFFIRM** the district court.

I.

Jena Kolley is a nineteen-year-old who has Oral Facial Digital Syndrome—a genetic disorder that causes physical defects of the mouth, tongue, teeth, jaw, face, head, eyes, nose, fingers, and toes, along with severe mental disability.  According to her parents, Jena communicates at the level of a child between the ages of five and seven and has the social skills of a child between four and eight.  In October of 2008, Jena arrived at school and reportedly told a teacher that her mother, Suzanne Kolley, "hit me."  The incident was referred to the Oakland County Sheriff's Department, which began an initial investigation.  On November 6, 2008, Jena again told school officials that her mother hit her, and the school referred the case to Adult Protective Services, a subsection of the Michigan Department of Human Services.

Adult Protective Services set up an interview with Jena at a facility called Care House.  Present at the interview were: Defendant Marcie Fincher, as a representative of Adult Protective Services; Detective Neph, from the police department; and Tricia Schuster, a forensic evaluator with Care House.  Based on Jena's statements, those present decided to file a Petition for Appointment of a Guardian for Jena Kolley in the Oakland County Probate Court on November 14, 2008.  That same day, the court entered

an order appointing a new guardian for Jena and authorizing her removal from the family home to a foster home through Macomb Oakland Regional Center in Southfield, Michigan. The Macomb Center placed Jena at Hazel House, a group foster facility. The court appointed Thomas Brennan Fraser as a temporary guardian and on November 18, 2008, appointed Shirley Ann Saltzman as a Guardian Ad Litem.

On December 23, 2008, the court decided to allow Joseph Kolley, Jena's father and noncustodial parent, to be a co-guardian with Fraser. However, on January 28, 2009, Saltzman filed a report challenging Joseph's suitability as a custodian. This led to a hearing that day where the court decided that Jena should stay in the state's care, but that her father Joseph could visit her. The Kolleys allege that at the hearing the defendants additionally offered false testimony that when Joseph visited Jena in late December, he "made sexual connotations towards Jena Kolley and requested that Hazel House give Jena a 'bikini wax' or otherwise shave her pubic hair." The court scheduled another hearing for March 2009. In the hallway after the January 28 hearing, Joseph and at least one of Jena's other family members got into a verbal fight with one of the Macomb Center workers and engaged in allegedly assaultive behavior.

The fight resulted in Fraser filing, on January 29, an Emergency Petition and Order seeking to suspend any visitation by Joseph and the rest of Jena Kolley's family. Jena's Guardian Ad Litem filed a supplemental report recommending that the court deny Joseph and the rest of Jena's family any physical or telephone contact with her. On January 30, the probate court entered an order denying the Kolleys contact with Jena until a scheduled March hearing.

At the March hearing, the probate court restored Joseph's visitation rights. In July 2009, the court decided to place Jena in her father's home and gave Joseph full custody. Criminal charges were initially filed against Jena's mother, Suzanne, but the charges were later dismissed.

In March 2009, the Kolleys filed suit in federal district court, but their case was ultimately dismissed without prejudice based on the abstention doctrine as established in *Younger v. Harris*, 401 U.S. 37 (1971). In May 2010, the Kolleys filed suit again, and

the court dismissed some claims, some with prejudice and some without prejudice, and allowed the Kolleys to amend their complaint. Finally, in April 2011, the Kolleys filed an amended complaint advancing three federal claims under section 1983 and six state claims. Regarding the federal claims, the Kolleys allege that the defendants deprived them of their right to familial association and their parental liberty interests in violation of the First and Fourteenth Amendments.

After motions to dismiss by all the defendants, the district court dismissed the federal claims, finding the Kolleys had failed to state a claim under Rule 12(b)(6). The court concluded that *Pittman v. Cuyahoga Cnty. Dept. of Children and Family Servs.*, 640 F. 3d 716 (6th Cir. 2011), controlled the case. The court refused to grant supplemental jurisdiction over the state claims. The Kolleys now appeal.

## II.

"We review de novo a district court's dismissal of a plaintiff's complaint for failure to state a claim under Rule 12(b)(6)." *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a plaintiff's complaint if it fails to state a claim upon which relief can be granted. *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tennessee Dept. of Child Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

First, we will assess the Kolleys' claim that the defendants violated their Fourteenth Amendment due process rights by depriving them of their parental liberty interest. The Kolleys allege that they were deprived of their substantive and procedural due process rights when the defendants: petitioned for an ex parte order when no emergency existed; failed to notify Joseph Kolley of the hearings; falsely testified about Joseph Kolley's actions and statements; and took advantage of Jena's disability to make

allegations against Suzanne Kolley.  The actions allegedly resulted in Joseph Kolley being denied custodial rights.

There are two types of deprivations that support substantive due process claims: "(1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.'"  *Pittman*, 640 F.3d at 728.  This claim deals with the first type of deprivation—deprivation of a constitutional guarantee, particularly the right to the maintenance of a parent-child relationship.  While "the Supreme Court has repeatedly reaffirmed the existence of a constitutional right to the maintenance of a parent-child relationship," that right is "neither absolute nor unqualified." *Kottmyer*, 436 F.3d at 689–90.  Thus, a government investigation of child abuse will not automatically implicate the right to familial association, *id.*, absent "evidence of bad faith, improper motive, or investigation tactics that 'shock the conscience.'" *Teets v. Cuyahoga Cnty., Ohio*, 460 F. App'x 498, 502 (6th Cir. 2012) (citing *Kottmyer*, 436 F.3d at 691 & n.1).

The district court relied almost exclusively on *Pittman* in dismissing the Kolleys' substantive due process claims, and we agree that *Pittman*'s analysis applies to this case. In *Pittman*, a father, Ricky Pittman, brought a section 1983 action against the Cuyahoga County Department of Children and Family Services and the primary social worker for Pittman's son, who had been removed from his mother's custody by Cuyahoga Family Services.  *Pittman,* 640 F.3d at 718.  Pittman claimed the defendants had "unconstitutionally deprived him of his fundamental right to family integrity, failed to accord him requisite due process before awarding custody to [his son's grandmother], and acted wantonly and recklessly in the state court custody proceedings." *Id.* at 722. Pittman argued that the social worker made "detrimental misrepresentations about Pittman in internal [Cuyahoga Family Services] proceedings," and as a result Cuyahoga Family Services determined he was unfit to be a caregiver to his son.  *Id.* at 729.

In reviewing the district court's denial of the social worker's motion for summary judgment, this Court found Pittman's substantive due process arguments unpersuasive because "to the extent that Pittman [had] suffered a deprivation of his fundamental right to family integrity, that deprivation was perpetrated by the juvenile court, not by [the

social worker]." *Id.* at 729. This Court reasoned that under Ohio law juvenile courts make custody determinations, thus Child Services and social workers are "merely [parties] to the juvenile court proceedings, tasked with presenting to the juvenile court [their] recommendation as to the appropriate course of action . . . ." *Id.* Because the juvenile court holds "the ultimate decision-making power with respect to placement and custody, it alone could deprive Pittman of his fundamental right," and the social worker's conduct did not violate Pittman's substantive due process rights. *Id.*

The *Pittman* analysis controls here. We recently applied *Pittman* in an analogous unpublished case. *Teets*, 460 F. App'x 498 (upholding a district court's grant of summary judgment to the defendants under the *Pittman* standard where the parents of a girl brought substantive and procedural due process claims against social workers and investigators for the investigation of their daughter's sexual abuse claims that resulted in her removal from the house). Although *Pittman* and *Teets* involved Ohio law, Michigan courts also have the ultimate decision-making power on custody and guardian appointment for developmentally disabled persons and can determine that such persons may need to be placed in a facility. Mich. Comp. Laws Ann. § 330.618(4)-(5) (West 2012); Mich. Comp. Laws Ann. § 330.1623. Each of the allegations in the Kolleys' amended complaint have to do with the defendants' actions *before* the court decided to deny Joseph Kolley visitation rights. Despite the alleged misrepresentations, the court was the final decision-maker regarding Jena's custody decisions. The Kolleys' substantive due process claim fails.

Regarding the Kolleys' procedural due process claim, the Kolleys must show that they were deprived of "'notice and opportunity for hearing appropriate to the nature of the case' before the termination [of parental rights became] effective." *Pittman*, 640 F.3d at 729 (quoting *Bell v. Burson*, 402 U.S. 535, 542 (1971)). As with the substantive due process claims, *Pittman* controls. In *Pittman*, this Court held that Pittman's procedural due process claims failed because he argued that the social worker had deprived him of notice and opportunity for a hearing before the juvenile court made the placement decisions. *Id.* at 729–30. This Court found it was the juvenile court's

duty, and not the duty of the social worker, to give notice to Pittman and thus upheld summary judgment for the social worker. *Id.* Here, too, the Kolleys argue that the defendants violated their procedural due process rights when the defendant social workers failed to notify Joseph Kolley of the custody hearings. Once again, as in Ohio, it is the Michigan courts' duty to notify the appropriate parties to a custody hearing. Mich. Comp. Laws Ann. § 330.1614(3). The Kolleys' procedural due process claim fails. The Kolleys have not stated a claim upon which relief may be granted under Rule 12(b)(6).

The Kolleys First Amendment claim also fails. They allege the defendants' actions, prior to the court order removing Jena from the Kolley household, violated their First Amendment right to family association. While the Kolleys have invoked the First Amendment, intimate association claims, such as the right to family association, are generally raised under the Due Process Clause of the Fourteenth Amendment, whereas freedom of expressive association claims—right to assembly, speech, petition for the redress of grievances, and the exercise of religion—are protected by the First Amendment. *Anderson v. City of LaVergne*, 371 F.3d 879, 881–82 (6th. Cir. 2004) (noting that an intimate association claim is a privacy interest derived from the Fourteenth Amendment and related to the First Amendment) (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984)). Family association is a form of intimate association, *Roberts*, 468 U.S. at 619–20, and therefore the argument is better considered as a Due Process claim. Because we analyze the family association claim under a due process framework, the *Pittman* analysis also applies.

The Kolleys allege that the defendants: wrongfully induced statements from Jena; wrongfully applied for an ex parte order from the court; misrepresented the evidence before the court; and exaggerated the level of danger Jena faced. The Kolleys argue that these actions led the court to order Jena's removal from Suzanne Kolley's home. As with the Kolleys' arguments regarding the denial of Joseph Kolley's visitation rights, because the Michigan courts have custodial decision-making power, Mich. Comp. Laws Ann. § 330.618(4)-(5) (West 2012); Mich. Comp. Laws Ann. § 330.1623, a violation of

the Kolleys' rights lies with the court and not with the defendants. The Kolleys have not alleged a legitimate violation of their associational rights. Their claim must be dismissed.

## III.

The Kolleys argue that the district court erred in denying them discovery before granting summary judgment for the defendants. The entire Kolley brief operates under the mistaken understanding that the district court resolved the case at the summary judgment stage. This is incorrect; the court dismissed the case under Rule 12(b)(6). A plaintiff is not entitled to discovery before a motion to dismiss, and dismissal under Rule 12(b)(6) helps protect defendants from expending resources on costly discovery for cases that will not survive summary judgment. *Twombly,* 550 U.S. at 558–59; *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003). We affirm the district court.

## IV.

The district court found in its order dismissing the original complaint that Hazel House was not a state actor for the purposes of the Kolleys' federal claims and was only properly joined for the Kolleys' state claims. Because the district court refused to exercise supplemental jurisdiction over the state claims, it granted Hazel House's motion to dismiss. The Kolleys do not dispute that Hazel House is not a state actor, but maintain in their reply brief that if this Court reverses the district court decision, Hazel House will once again be a properly joined party to the case because of their state claims. Because we affirm the district court decision as to the federal claims, we need not decide this issue. The dismissal of Hazel House remains in effect.

## V.

We **AFFIRM** the district court judgment.