NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 19a0396n.06

Case No. 18-3858

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Aug 01, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| NANCY ARSAN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| BETH KELLER, et al., | ) | OHIO |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: SUHRHEINRICH, CLAY, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Nancy Arsan lost custody of her two children, KO and KK, in 2015. Following the custody dispute, Arsan sued eight caseworkers; the guardian *ad litem*; the Greene County Ohio Department of Job and Family Services, Children's Services Division ("Children's Services"); Greene County, Ohio; and the Greene County, Ohio Board of Commissioners. She alleged a litany of constitutional violations as well as conspiracy to violate her constitutional rights, all stemming from one caseworker's warrantless search. The district court dismissed the claims against the guardian *ad litem* and granted judgment on the pleadings in favor of the county defendants on all but the Fourth Amendment claim against the caseworker who conducted the search. The court then held a two-day jury trial on the Fourth Amendment claim; the jury found that Arsan had consented to the alleged search, and that the

caseworker therefore did not violate Arsan's Fourth Amendment rights. The district court then denied Arsan's motions to set aside the jury verdict and for a new trial. On appeal, Arsan challenges the district court's dismissal of the guardian *ad litem*, its judgment on the pleadings in favor the county defendants, and its denial of Arsan's post-trial motions. Finding no error, we affirm all three decisions.

## I.

## BACKGROUND[1]

This case stems from a custody dispute between Nancy Arsan, a resident of Greene County, Ohio, and her children's fathers, Kristopher Otto and Michael Klumb. Arsan is of Syrian descent but speaks English and works as an interpreter.

Arsan alleged that on April 29, 2015, a Children's Services caseworker, Kristi Weber, "pound[ed]" on her door, and "[w]hen [Arsan] opened the door, Weber, without a warrant, without consent and without identifying herself, pushed her way into [her] residence[.]" R. 1, PageID 5. Once inside, Weber identified herself and told Arsan that "there was a report that [she] was abusing drugs in her home and neglecting her children[.]" *Id.*, PageID 6. In response, Arsan told Weber that Klumb had previously threatened to take away their child and that "it was probably him who made such a report," and showed Weber text messages to support her statement. *Id.* Then, Arsan alleged, Weber "without permission began searching [Arsan's] phone and reviewing other unrelated messages," and "despite repeated requests to leave and without consent, began searching the residence, entering other rooms without permission and opening a closet[.]" *Id.*

During this time, Weber's two-year old son, KK, was home, "crying and afraid," and Arsan told Weber that her other son, KO, was with his aunt, Jennifer McDermott. *Id.*, PageID 7.

---

[1] All facts taken as alleged in complaint.

McDermott, Otto's sister, was a former Children's Services employee. Weber went out to the porch and called McDermott to verify that she was with KO. Upon returning inside and in response to Arsan's request for Weber to leave, Weber "stated that she would not leave until [Arsan] admitted to something or she would do an emergency removal and take KK immediately[.]" *Id.* Arsan refused to do so. Weber went outside again to call McDermott back "and asked what the next step was because [Arsan] was not cooperating[.]" *Id.* Weber then came back inside and "stated that she would not leave until [Arsan] submitted to a drug test[.]" *Id.*

Arsan told Weber that she would go to Weber's office the next day but Weber "refused to leave and began pretending she did not understand [Arsan's] accent[.]" *Id.*, PageID 7–8. "It was late in the evening and [Arsan], under duress and to get Weber to leave, admitted to smoking marijuana in the past[.]" *Id.*, PageID 8. Weber then "demanded a drug test" and "[u]nder duress, [Arsan] complied and when asked by Weber, stated that she took Adderall for ADHD[.]" *Id.* Weber "swabbed [Arsan's] mouth and collected the swab but did not seal it, which is against protocol for taking the test[.]" *Id.* Weber "threatened to immediately take her son if [Arsan] did not agree to a safety plan," and thus Arsan and KK "were placed on a safety plan with her friend Brittany Hunter as supervisor of the plan[.]" *Id.*

The next day, Arsan met with Weber, Beth Keller—another Children's Services employee—and Otto, who attended by phone, at Children's Services. Arsan "was told that she was acting too emotionally," she "explained that in her culture people express their feelings more openly," and "Keller told her that here they could find her crazy for acting in that manner[.]" *Id.*, PageID 10. Arsan requested a neutral caseworker but Keller denied her request and assigned McDermott—without a background or drug test—as supervisor of KK's safety plan. Arsan later learned that "McDermott, Keller and Weber had personal relationships and were friends on

Facebook," and that prior to meetings scheduled with Arsan, McDermott would meet privately with the Green County Children's Services staff. *Id.*

Arsan's mother then arrived from Lebanon and became the supervisor of KK's safety plan. Later, Weber returned to Arsan's home with a police officer and told Arsan that she had received "a tip that [Arsan] had violated the safety plan because her mother had taken a nap in another room[]" which violated the plan's requirement that Arsan not supervise the children alone. *Id.*, PageID 11. Weber "demanded that [Arsan] make [McDermott] supervisor of the plan or she would remove [KK]," and Arsan, "in fear agreed[.]" *Id.* When McDermott "later stated she could no longer supervise" KK and KO, the boys' fathers, Klumb and Otto, became the children's supervisors. *Id.*, PageID 12. The men did not undergo background checks or drug tests.

Later on, Weber called Arsan to inform her that her drug test was positive for "high levels of methamphetamines and amphetamines[.]" *Id.* Wanting to discuss these results, Arsan went to Children's Services. While waiting for Weber and Keller, Arsan overheard the receptionist (Christina "last name unknown") say to Weber that "the foreign lady" was in the waiting room. *Id.* Arsan then met with Weber and Keller and asked for a copy of the drug test. *Id.*, PageID 13. They refused to give her one. A few months later after she secured a copy from her new caseworker, Kelly Mohammad, Arsan "confronted Keller about her refusal[.]" *Id.* Keller "stated that she had not understood [Arsan] due to her accent[.]" *Id.*

Throughout this time period, Children's Services supervisors held weekly "administrative review" meetings in which they "reviewed and approved" Weber and Keller's work. *Id.*, PageID 14. The supervisors involved in the meetings included Amy Amburn, Lana Penney, Joshua Coomer, and Chad King, all named defendants.

The Greene County Juvenile Court held a custody hearing on May 22, 2015. Weber testified that she "had a report of [Arsan] using methamphetamine and physically abusing her children," and that Arsan "had been seen smoking crack cocaine." *Id.* She reported that the drug test from May 4, 2015 indicated high levels of methamphetamines and amphetamines but that she did not have the results of a second drug test, which turned out to be negative. Weber further testified that Arsan had no criminal record and that she had "no concerns regarding the condition of [Arsan's] residence[.]" *Id.* at 9. Following the hearing, Children's Services Program Resource Manager, Amy Weinman, found that the report of "physical abuse and neglect of KO and KK was substantiated." *Id.* at 13.

On May 29, 2015, the court granted temporary custody of KK to his father, Klumb, and custody of KO, under the supervision of Children's Services, to Otto. Since Klumb lived outside Greene County, Children's Services terminated its involvement with KK. Otto filed a custody action and the Greene County Juvenile Court appointed David Fierst as guardian *ad litem* for KO. Although Fierst was asked to visit Arsan's home, he declined to do so, saying that he "already had enough evidence[,]" "didn't have time," and could rely on the reports from Children's Services and Otto. *Id.* At subsequent custody hearings in October and November 2016, Fierst testified that since Arsan was Middle Eastern, "she was probably a[] Muslim." *Id.* When asked "what difference that would make," Fierst said to "turn on the TV to see what these people do[.]" *Id.* On March 29, 2017, Fierst participated in a conference call between the Juvenile Court judge and the attorneys for each party.

Arsan filed a seven-count complaint, pursuant to 42 U.S.C. §§ 1983 and 1985(3), in the Southern District of Ohio on April 11, 2017. In counts one through four, she alleged that the Children's Services employees, either through direct action or supervisory review, violated her

Fourth Amendment right against unreasonable searches and seizures, her Fifth Amendment right against self-incrimination, her Fourteenth Amendment due process right, and her Fourteenth Amendment equal protection right. In her fifth cause of action, Arsan alleged that the Children's Services employees conspired to deprive her of these rights and take custody of her children. In the sixth and seventh counts, Arsan alleged that Children's Services, the Greene County Ohio Board of Commissioners, and Greene County, Ohio, failed to supervise and train their employees. In addition, Arsan brought the equal protection claim against Fierst and the conspiracy claims against Fierst and McDermott. Arsan requested $32,830.00 in actual damages—equal to remodeling expenses for Otto's home, lost wages and legal expenses[2] —and $250,000 in punitive damages.

The district court disposed of the case in three main stages. First, it granted Fierst's 12(b)(6) motion to dismiss the claims against him. The court held that since Fierst was sued in his capacity as guardian *ad litem*, he was protected by quasi-judicial immunity. The court also held, assuming *arguendo*, that even if Fierst were not immune, the conspiracy claim would fail because Arsan failed to state a plausible claim and the Fourteenth Amendment claim would fail because Fierst was not a state actor. Second, the court granted the defendants' motions for judgment on the pleadings with respect to every claim except the Fourth Amendment unreasonable search allegation against Weber. The court then held a two-day jury trial on the Fourth Amendment claim against Weber; the jury found that Weber did not violate Arsan's Fourth Amendment rights

---

[2] In its order denying Weber's motion for summary judgment, the district court opined on Arsan's damages request. It stated that "Plaintiff's alleged damages of $32,500 consist of remodeling expenses for a house that she did not own, lost wages and legal expenses to litigate the Greene County Juvenile Court custody dispute. Plaintiff has specifically stated that the lost wages are not attributable to Defendant Weber, and at this stage, it is difficult to see any legal connection between Weber's alleged actions and remodeling expenses for a residence that Plaintiff did not own or a legal determination made by the juvenile court." R. 90, PageID 817. It then noted that "[b]ased on Plaintiff's deposition testimony, as well as the above cited legal authority, compensatory damages may not be recoverable in this case leaving Plaintiff with, at most, nominal damages." *Id.*, PageID 818.

because Arsan consented to the search, drug test, and implementation of a safety plan. Third, the court denied Arsan's motions to set aside the jury verdict and for a new trial. On appeal, Arsan challenges all three district court decisions. We find Arsan's arguments unpersuasive and affirm the district court in all respects.

## II.

## ANALYSIS

Arsan's overarching argument is that the district court "artificially separate[ed] facts into air-tight categories" rather than taking a "totality of the circumstances approach." Appellant Br. at 17. We review each of the district court's decisions—its granting of Fierst's motion to dismiss, its granting judgment on the pleadings in favor of the defendants on all but the Fourth Amendment claim, and its denial of Arsan's motions to set aside the jury verdict and for a new trial—separately and conclude that the district court correctly ruled at each stage of the litigation. We therefore affirm in full.

### 1. MOTION TO DISMISS

Arsan alleged two claims against Fierst: (1) violation of her Fourteenth Amendment equal protection right by giving "testimony under oath based upon ethnic, racial and religious bias in his position as Guardian *ad litem* in Plaintiff's custody case for KO"; and (2) conspiracy to violate her constitutional rights by "[relying] upon the plan and the fruits of the actions to further the conspiracy of McDermott and Weber and Keller to ensure that custody of KO be given to Kris Otto." R. 1, PageID 19–20. Granting Fierst's 12(b)(6) motion to dismiss both claims, the district court held that Fierst, as guardian *ad litem*, was protected by quasi-judicial immunity, and that, assuming *arguendo* that he was not entitled to immunity, Arsan failed to plausibly state equal protection and conspiracy claims against him. Arsan argues that the court erred because immunity

only shields liability for Fierst's words, not his actions. We disagree and affirm the district court's granting of Fierst's motion to dismiss the claims against him on the basis of absolute quasi-judicial immunity.

### a. Standard of Review

This court reviews *de novo* a district court's grant of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 246 (6th Cir. 2012). In evaluating a Rule 12(b)(6) motion to dismiss, we construe "the record in the light most favorable to the non-moving party" and determine whether the complaint "'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* at 246–47 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim lacks facial plausibility unless the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" but is not akin to a probability requirement. *Id.* In conducting this analysis, the court "'primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.'" *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)).

### b. Quasi-Judicial Immunity

Because Arsan sued Fierst for actions taken in his capacity as guardian *ad litem*, Fierst is entitled to absolute immunity. The district court therefore correctly granted his motion to dismiss.

Absolute immunity protects judges from liability for acts performed in their judicial capacity. *See Cleavinger v. Saxner*, 474 U.S. 193, 199 (1985). The Supreme Court has extended

this defense—sometimes called "quasi-judicial immunity"—to others "who perform functions closely associated with the judicial process." *Id.* at 200. Guardians *ad litem* are entitled to such immunity when they act within the scope of their roles as "advocate[s] for the child in judicial proceedings." *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984). This is because guardians *ad litem* "must also be able to function without the worry of possible later harassment and intimidation from dissatisfied parents." *Id.* As such, "failure to grant immunity would hamper the duties of a guardian *ad litem* in his role as advocate for the child in judicial proceedings." *Id.* This immunity applies to federal constitutional claims, *see id.*, and Ohio state law claims, *see Dickson v. Gorski*, 100 N.E.3d 857, 859 (Ohio Ct. App. 2017).

On appeal, Arsan contends that while quasi-judicial immunity protects Fierst from "words spoken in office[,]" "[n]othing bars him from liability *for his actions*." Appellant Br. at 44. Arsan misunderstands the doctrine. Quasi-judicial immunity shields guardians *ad litem* for precisely what Arsan argues it does not—the actions they take while investigating, gathering information about the parents and children, and reporting to the court their custody recommendations. *Kurzawa*, 732 F.2d at 1458. Here, Arsan would have the court hold Fierst liable because he "gave testimony under oath based upon ethnic, racial and religious bias in his position as Guardian ad litem in Plaintiff's custody case for KO" and "relied upon the plan and the fruits of the actions to further the conspiracy . . . to ensure that custody of KO be given to Kris Otto[.]" R. 1, PageID 19–20. Leaving aside other threshold issues, like whether Fierst was a state actor and whether these allegations plausibly amount to cognizable constitutional violations, we find that all of Arsan's grievances against Fierst stem from his actions as guardian *ad litem*. Reporting custody recommendations to the court—based on biases or not—is within the scope of a guardian *ad litem*'s functions. Thus, the district court properly dismissed the claims against Fierst because he

was entitled to absolute immunity for the § 1983 equal protection and § 1985(3) conspiracy and Ohio state law conspiracy claims.  We affirm.

## 2.  MOTIONS FOR JUDGMENT ON PLEADINGS

Arsan challenges the district court's judgment on the pleadings in favor of the county defendants and McDermott.  She argues that the district court erred in dismissing the § 1983 constitutional claims against the individual county defendants, all of whom she sued in their personal and official capacities.  She also contends that the district court erred in dismising the § 1983, § 1985(3), and Ohio state law conspiracy claims against the individual county defendants and McDermott, for failure to state a claim.  Last, she argues that the court erred in dismissing the § 1983 failure to train and supervise claims against Greene County, Ohio Board of Commissioners and Greene County, Ohio.  Arsan's arguments are meritless.  Because Arsan failed to state plausible claims for relief against anyone (except for Weber in her personal capacity for the alleged Fourth Amendment violation), we affirm the district court's grant of judgment on the pleadings with respect to McDermott and all county defendants.

### a.  Standard of Review

This court reviews a district court's judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure under the same *de novo* standard as it reviews a decision granting a motion to dismiss under Rule 12(b)(6).  *Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010).  Judgment on the pleadings is proper "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).  The "complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr. v. Ill. Union Ins.*, 508 F.3d 327, 336 (6th Cir.

2007). Accordingly, the court construes the complaint in the light most favorable to the nonmoving party, accepts the well-pled factual allegations as true, and determines whether the complaint contains enough facts to make the legal claims facially plausible. *Id.* (citing *United States v. Moriarty*, 8 F.3d 329, 332 (6th Cir. 1993)).

### b. Constitutional Claims Against Individual Defendants in their Official Capacities

Arsan challenges the district court's judgment on the pleadings dismissing all of her constitutional claims, except for her Fourth Amendment claim against Weber in her personal capacity. Arsan alleged all constitutional violations against the individual county officials in their official capacities.[3] An official-capacity claim, however, is just a claim against the municipality. *See Cady v. Arenac Cty.*, 574 F.3d 334, 342 (6th Cir. 2009) ("In an official capacity action, the plaintiff seeks damages not from the individual officer, but from the entity for which the officer is an agent.") (citation omitted); *Essex v. Cty. of Livingston*, 518 F. App'x 351, 354 (6th Cir. 2013) ("[A]n official-capacity claim is merely another name for a claim against the municipality."). Arsan's official-capacity claims fail for the same reason her municipal liability claims fail, as discussed below. We therefore affirm the dismissal of all constitutional claims against the individual county officials in their official capacities.

### c. Constitutional Claims Against Individual Defendants in their Personal Capacities

Arsan also challenges the district court's judgment on the pleadings for the alleged constitutional violations (with the exception of the Fourth Amendment claim against Weber) pursuant to § 1983 against the individual county officials in their personal capacities. We agree

---

[3] In its judgment on the pleadings, the district court did not differentiate between the claims brought against the county officials in their personal and official capacities. But because the capacities implicate different pleading requirements and potential immunities, we do.

with the district court that Arsan failed to plead plausible constitutional violations against the individual county defendants in their personal capacities under § 1983. We therefore affirm.

### 1. *Fifth Amendment*

The district court dismissed Arsan's Fifth Amendment claim upon finding that there were no criminal proceedings in which Arsan was compelled to testify against herself. It therefore held that she failed to state a plausible claim for relief. On appeal, Arsan does not contest the district court's dismissal of her Fifth Amendment claim. She has therefore waived any challenge to the district court's disposition of this claim. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir. 2005). We thus affirm the district court's judgment on the pleadings in favor of all county defendants on Arsan's Fifth Amendment claim.

### 2. *Substantive Due Process*

Although Arsan alleged only a general "due process" violation in her complaint, she clarified in her response to defendants' motion for judgment on the pleadings that she was bringing both substantive and procedural due process claims. The district court analyzed both types of due process claims and granted judgment on the pleadings in favor of the county officials, and we agree.

Here, once we wade through what Arsan labels as due process claims but are really Fourth Amendment, Fifth Amendment, and equal protection claims, *see Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 217 (6th Cir. 2011) ("Substantive-due-process challenges usually do not survive if a provision of the Constitution directly addresses the allegedly illegal conduct at issue."), we are left with a claim that Arsan's substantive due process right to raise her children was violated when she lost custody. As the district court observed, "[a]t the heart of Plaintiff's substantive due process claim, and in fact the entire case, is the alleged violation of Plaintiff's

rights as a parent and the removal of her children from her home." R. 92, PageID 829. On appeal, Arsan confirms the district court's understanding of her substantive due process claim: she argues that the county defendants violated her "substantive parenting rights" through their involvement and influence in the custody proceedings. Appellant Br. at 33.

Arsan is correct that there is a qualified substantive due process right "to raise one's child." *Bartell v. Lohiser*, 215 F.3d 550, 557 (6th Cir. 2000); *see Kottmyer v. Maas*, 436 F.3d 684, 690 (6th Cir. 2006) (noting that right to family integrity "is limited by an equal[ly] compelling governmental interest in the protection of children, particularly where the children need to be protected from their own parents"). But county caseworkers cannot be held liable for a juvenile court's decision to deprive a parent of custody "[b]ecause Ohio law refers custody decisions to the juvenile court, which has independent authority to conduct hearings and collect evidence." *Teets v. Cuyahoga Cty,* 460 F. App'x 498, 502 (6th Cir. 2012) (citing *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 729 (6th Cir. 2011)). "[E]ven intentional misrepresentations by a social worker during an investigation leading up to Ohio custody proceedings do not violate the parent's substantive due process rights because the social worker has no independent ability to institute the alleged deprivation." *Id.* Thus, when "the [plaintiff] seek[s] to hold [county caseworkers] accountable for subsequent criminal or juvenile court actions, that argument also fails." *Id.* But that is precisely what Arsan attempts to do. Her claim against the individual county officials for violating her substantive due process right to raise her children therefore fails.

### 3. Procedural Due Process

Arsan similarly challenges the district court's judgment on the pleadings in favor of the county defendants on her procedural due process claim. She argues that her custody hearing was

"hardly a fair or meaningful hearing" because it was "tainted by" Weber's testimony, including her testimony regarding the positive results from the allegedly coerced drug test. Appellant Br. at 27. Arsan also argues that Weber and her supervising caseworkers violated her right to a fair hearing by not introducing the negative drug test results from her second test.

Procedural due process requires that "an individual be given the opportunity to be heard 'in a meaningful manner.'" *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996) (quoting *Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 563 (6th Cir. 1983)). When an aggrieved parent sues county caseworkers for their conduct during child custody proceedings culminating in the deprivation of custody by the juvenile court, however, responsibility for procedural deficiencies lies with the juvenile court, not the caseworkers. *Pittman*, 640 F.3d at 730. When caseworkers give testimony or otherwise participate as legal advocates in custody hearings, quasi-prosecutorial immunity shields them from liability. *Id.* at 724. This immunity, which is absolute and applies in the same way as prosecutorial immunity, shields caseworkers from damages even when they knowingly make false or defamatory statements, *id.* at 725, or when their conduct is "unquestionably illegal or improper," *Cady*, 574 F.3d at 340. All that matters is that the alleged illegal conduct stems from the caseworker's "capacity as a legal advocate," such as testifying in juvenile court. *Pittman*, 640 F.3d at 724.

Here, Arsan argues that the custody hearing was not "fair or meaningful" due to Weber's testimony and alleged withholding of the negative drug test results. Appellant Br. at 35. If true, Weber's alleged conduct is "unquestionably" improper. *Cady*, 574 F.3d at 340. But her testimony and actions in juvenile court nonetheless stem from her capacity as a legal advocate. *Pittman*, 640 F.3d at 725. Thus, Weber is entitled to quasi-prosecutorial absolute immunity with respect to Arsan's procedural due process claim. Likewise, the only link Arsan alleged between Weber and

the rest of the county caseworkers is that they "ratified and endorsed" Weber's actions and "failed to discipline Weber in any way," thereby making them responsible for the alleged procedural due process violation, too. R. 1, PageID 17–18. But § 1983 makes no room for *respondeat superior* liability. *See Iqbal*, 556 U.S. at 676. "[A] supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016). As such, "a mere failure to act will not suffice to establish supervisory liability." *Id.* Thus, the district court correctly granted judgment on the pleadings in favor of all county defendants on Arsan's procedural due process claim.

### 4. Equal Protection

Arsan challenges the district court's judgment on the pleadings in favor of the county defendants on her Fourteenth Amendment equal protection claim. She argues that the county caseworkers "engaged in a pattern of discrimination based on her ethnicity." Appellant Br. at 37. To support this allegation, she contends that (1) the Children's Services receptionist referred to her as "the foreign lady"; (2) Keller told her "she could be considered crazy" by acting too emotional, which Arsan contends is "within her ethnic cultural norms"; and (3) her mother—also Lebanese—received a background check and lost supervision status, while "[w]hite persons were readily made supervisors of the safety plans for her children without background checks." *Id.*[4] We agree with

---

[4] She also points to Fierst's comment about persons of Middle Eastern descent as terrorists and his assertion that she "must be Muslim." Appellant Br. at 37. As discussed above, however, Fierst is entitled to absolute immunity for his conduct in his capacity as guardian *ad litem*, and the rest of the caseworkers are not responsible for Fierst's racist statements.

the district court that Arsan failed to allege facts that plausibly amount to an equal protection violation.

The Fourteenth Amendment's Equal Protection Clause commands that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state an equal protection claim, a plaintiff must adequately plead that the government actor treated her "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006), *overruled on other grounds by Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008). Thus, "[t]he threshold element of an equal protection claim is disparate treatment," *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006), and only intentional, purposeful discrimination violates the equal protection clause, *see Washington v. Davis*, 426 U.S. 229, 239–40 (1976). Further, the right to equal protection is personal; barring a recognized exception, a plaintiff cannot assert an equal protection claim on behalf of a third party. *See Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004).

Arsan has failed to meet the threshold requirement of an equal protection claim. While the receptionist's and Keller's alleged commentary is at best rude and at worse racist, such commentary, without any allegation that Arsan was treated differently from similarly situated parents on the basis of race, does not constitute an equal protection violation. *See Scarbrough*, 470 F.3d at 260. Further, to the extent Arsan asserts that her mother was discriminated against based on race when she underwent a background check and eventually lost supervision status, this claim fails because Arsan cannot assert this claim on behalf of a third party. *See Kowalski*, 543 U.S. at 129. Likewise, to the extent Arsan argues she is not enforcing the rights of her mother, but

instead "is trying to have a person of her own ethnicity for her children for her own benefit," Appellant Br. at 39, this claim fails because Arsan has not alleged any facts regarding whether other parents are appointed supervisors of their same ethnicities. Thus, we agree with the district court that Arsan failed to plausibly allege an equal protection claim against any county defendant. We affirm accordingly.

### 5. Fourth Amendment / Qualified Immunity

The district court dismissed Arsan's Fourth Amendment claim against all county caseworkers except for Weber upon finding that "nowhere in the Complaint is there any allegation that those individual County Defendants had any direct involvement in any search at Plaintiff's home" and that they were therefore entitled to qualified immunity. R. 92, PageID 841. It is unclear to what extent Arsan challenges this determination, as her argument, structured as a list of rhetorical questions and no caselaw, is that *if* the court finds the defendants liable for the Fourth Amendment violation, *then* they are not entitled to qualified immunity. Because county defendants do not have supervisory liability under § 1983, and therefore cannot be liable for Weber's search under a *respondeat superior* theory, *see Peatross*, 818 F.3d at 241, we find that Arsan failed to plausibly allege a Fourth Amendment violation against anyone but Weber.[5] Thus, we agree with the district court's grant of judgment on the pleadings in favor of the individual county defendants and need not reach the issue of qualified immunity.

---

[5] On appeal, Arsan seems to argue that Weber was not entitled to qualified immunity on the Fourth Amendment claim. *See* Appellant Br. at 45 ("Weber forced herself into Appellant's home and searched without consent or warrant based on a tip."). But no one argues that she was, and the district court explicitly found that she was not. Indeed, Weber's warrantless search is the very issue for which the case proceeded to trial. Arsan's arguments concerning Weber's entitlement to qualified immunity on the Fourth Amendment claim are therefore misplaced and irrelevant.

### d. Conspiracy Claims Against County Defendants, Fierst, and McDermott

Arsan alleged three conspiracy claims[6] against the county caseworkers, Fierst,[7] and McDermott, and the district court granted judgment on the pleadings in favor of the defendants for all. We agree that Arsan has failed to plausibly allege conspiracy—of any sort—and affirm.

#### 1. *42 U.S.C. § 1985(3): Conspiracy to Deprive Arsan of Equal Protection*

Arsan contends that the district court erred in dismissing her § 1985(3) allegation for failure to state a claim. She argues that the caseworkers' and McDermott's "interactions were aimed at depriving the Appellant of her son and placing him in the case of the Otto family" and that "in the interactions with the state workers involved in her case, ethnic animus was blatantly displayed." Appellant Br. at 24–25. We find that these statements do not constitute sufficient conspiracy allegations under § 1985(3).

> To state a claim under § 1985(3), a plaintiff must allege:
>
> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 828–29 (1983). Thus, a plaintiff who alleges a conspiracy to deprive her of equal protection under § 1985(3) must establish not only that the defendants share a common plan but that they share a "common discriminatory objective." *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 368 (6th Cir. 2012). Plaintiffs must plead conspiracy claims "with some degree of specificity and . . . vague and

---

[6] Notably, Arsan's complaint contains only one generalized conspiracy allegation: "conspiracy for deprivation of constitutional rights." R. 1, PageID 19. After the defendants moved for judgment on the pleadings, Arsan specified which theories she was bringing, *see* R. 49, PageID 276, and the district court analyzed and dismissed all three theories. We do the same.

[7] Because we find that the district court properly dismissed Arsan's claims against Fierst on the basis of guardian *ad litem* immunity, we exclude him from our present analysis.

conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Here, Arsan's complaint contains one paragraph relating to conspiracy: that the caseworkers "planned and acted in concert to deprive" her of her constitutional rights, and "to coerce the Plaintiff into accepting unjustified safety plan supervisors and the removal and/or change of custody of her children." R. 1, PageID 19–20. On appeal, she attempts to support these allegations by arguing that Weber, Keller, and McDermott "were in real time communication" regarding the search at Arsan's home, which shows "conspiracy to deprive [Arsan] of her children and give them to white individuals." Appellant Br. at 26–27. She also points to the receptionist's referring to her as "the foreign lady" and Fierst's racist comment about terrorists. *Id.* at 25. But the existence of communication between caseworkers and McDermott—who were all involved with the custody case—does not plausibly allege a common scheme to deprive her of constitutional rights, let alone one that is race-based. Likewise, the receptionist's and Fierst's comments are rude, but they are just that. They do not indicate a conspiracy between all county caseworkers, McDermott, and Fierst to deprive Arsan of her children based on her race. Thus, the district court properly granted judgment on the pleadings upon finding that "Plaintiff has offered no specificity to any alleged conspiracy, common discriminatory animus or a particular plan between Defendants." R. 92, PageID 836.

### 2. *42 U.S.C. § 1983: Conspiracy to Deprive Arsan of Constitutional Rights*

Arsan similarly challenges the district court's judgment on the pleadings in favor of defendants on her § 1983 conspiracy claim. As best we can tell, Arsan's § 1983 claim concerns an alleged conspiracy to deprive her of her children, in violation of her due process right to raise her own kids. *See* Appellant Br. at 28 ("There is thus a constitutionally protected liberty interest in family relationships, child rearing and education[.] . . . The Appellant's rights herein are both

procedural and substantive. She, as pled, was deprived of both."). Arsan "refer[s] to the facts elicited above" to support this conspiracy, too. *Id.* Arsan's arguments are unavailing.

To successfully plead a § 1983 conspiracy, a plaintiff must allege sufficient facts to state a claim that "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007) (citing *Am. Postal Workers Union, Local 96 v. City of Memphis*, 361 F.3d 898, 905–06 (6th Cir. 2004)). A plaintiff's "failure to plead a plan or agreement to violate his constitutional rights is fatal to his conspiracy claim." *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011). Like a § 1985(3) claim, a § 1983 conspiracy claim "must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (quoting *Gutierrez*, 826 F.2d at 1538). This pleading standard is "relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

Here, Arsan's § 1983 claim rests on the same paragraph in her complaint as her § 1985(3) claim: the caseworkers "planned and acted in concert to deprive" her of her constitutional rights, and "to coerce the Plaintiff into accepting unjustified safety plan supervisors and the removal and/or change of custody of her children." R. 1, PageID 19–20. Just as this was not enough to state a claim for conspiracy to deprive Arsan of her equal protection right, it is not enough to state a claim for conspiracy to deprive her of her due process right to raise her children. We agree with the district court that Arsan's allegations are merely conclusory as she has failed to adequately "plead any factual allegations of a 'single plan' or a 'conspiratorial objective.'" R. 92, PageID 837. Thus, this failure is "fatal" to her claim, *Heyne*, 655 F.3d at 564, and we affirm the district

court's judgment on the pleadings in favor of the defendants with respect to the § 1983 conspiracy allegation.

### 3.  State Law Conspiracy

Arsan also challenges the district court's grant of judgment on the pleadings in favor of the defendants on her Ohio conspiracy claim.  She argues that the district court "was fixated on labels, not facts pled, contrary to *Iqbal*."  Appellant Br. at 29.  To the extent we can discern what this means, we find it meritless.  There is no indication that the district court failed to consider Arsan's factual allegations.  On the contrary, the district court concluded that Arsan failed to state a claim for Ohio conspiracy upon finding that she did not plead "the elements of the torts of defamation or misuse of process in her Complaint," R. 92, PageID 838, as is relevant to an Ohio conspiracy claim's requirement for "an underlying tortious act that causes an injury," *Doane v. Givaudan Flavors Corp.*, 919 N.E.2d 290, 298 (Ohio Ct. App. 2009).  We agree with the district court that Arsan failed to plead defamation or misuse of process claims in her complaint, and therefore further agree that she failed to state a claim for Ohio conspiracy.  We affirm the district court's grant of judgment on the pleadings in favor of the defendants on the Ohio civil conspiracy claim.

### e.  Failure to Train and Supervise Claims Against the County, Board of Commissioners, and Children's Services for Fourth Amendment Violation

Arsan challenges the district court's grant of judgment on the pleadings in favor of defendants on Arsan's failure to supervise and train claims against Children's Services, Greene County, and the Greene County, Ohio Board of Commissioners.  She argues that they are liable for their employees' constitutional violations because they exhibited deliberate indifference to such violations.  First, we agree with the district court's determination that Children's Services is not *sui juris*, and therefore lacks the capacity to be sued.  Second, we agree with the district court's determination that Arsan failed to state claims for failure to supervise and train against the County

and Board because she did not sufficiently plead deliberate indifference to the alleged Fourth Amendment violation, the only claim for which Arsan stated a plausible constitutional violation. We therefore affirm the district court's grant of judgment on the pleadings in favor of defendants on the failure to supervise and train claims.

### 1. Children's Services

In her report and recommendation regarding judgment on the pleadings, the magistrate judge concluded that as a branch of the county government, Children's Services must be dismissed as a party because it is not *sui juris* and therefore "lacks the capacity to be sued." R. 68, PageID 376. Although the district court did not write separately on this issue, it adopted the magistrate's recommendations "in their entirety." R. 92, PageID 821. On appeal, Arsan does not contend that Children's Services is *sui juris*. Thus, we find that Arsan forfeited any challenge to Children's Services' capacity to be sued, and we affirm the district court's dismissal of Children's Services as a party. *See Radvansky*, 395 F.3d at 311.

### 2. Greene County and the Board of Commissioners

On appeal, Arsan challenges the district court's dismissal of her failure to train and supervise claims against Greene County and the Greene County, Ohio Board of Commissioners. She argues that in dismissing her claims, the district court provided "a blanket statement and no analysis" and that "this issue should [therefore] be remanded to the District Court for explication." Appellant Br. at 43. We disagree. In her complaint, Arsan included a one-sentence factual allegation concerning the failure to supervise or train theories: the County and Board are liable because they "have taken no action, remedial or otherwise to address these problems through training programs or other measures to improve staff sensitivies or performance." R. 1, PageID 22. The district court appropriately found that Arsan did not state claims for failure to supervise

and train. We therefore affirm its judgment on the pleadings on the failure to train and supervise claims with respect to the County and the Board.

Section 1983 creates a federal cause of action against "any person" who deprives someone of a federal constitutional right while acting under color of state law. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978). Although § 1983 does not abrogate state sovereign immunity, the statute provides a vehicle to sue local governments for constitutional violations. *Id.* at 690. A city can be a "person" for the sake of a § 1983 claim. *Id.* But a municipality cannot be held liable under § 1983 on a *respondeat superior* theory—or, in other words, because it employs a tortfeasor. *Id.* at 691. Rather, local governing bodies are "liable under § 1983 only if the challenged conduct occurs pursuant to a municipality's 'official policy,' such that the municipality's promulgation or adoption of the policy can be said to have 'caused' one of its employees to violate the plaintiff's constitutional rights." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (brackets omitted) (quoting *Monell*, 436 U.S. at 692). The "touchstone," then, is an "official policy" that causes the alleged constitutional violation. *Monell*, 436 U.S. at 690.

One way a plaintiff can hold a municipality liable for a constitutional violation is to show a policy of inadequate training or supervision that "amounts to deliberate indifference to constitutional rights." *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994 (6th Cir. 2017) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). In a deliberate-indifference case, the plaintiff must show: (1) the employee's act caused a constitutional tort; (2) the city's failure to train its employee caused the employee's violation; and (3) the city knew or should have known that the failure to train would lead to the constitutional violation and nonetheless declined to train its employees. *Id.* at 995 (citing *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)). Thus, in order to state a failure-to-train claim against the County and Board, Arsan must

allege "prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citation, quotation marks, and brackets omitted).

Here, Arsan does not specify the alleged constitutional violations for which she seeks to hold the County and Board liable. Because we find that Arsan failed to state claims for any constitutional violations aside from the Fourth Amendment claim against Weber, however, we cabin our analysis of municipal liability to Weber's warrantless search. *See Arrington-Bey*, 858 F.3d at 994. Arsan's only factual allegation concerning the County and Board's relation to the alleged unreasonable search is that Weber's supervisors "reviewed" her actions and "failed to discipline Weber in any way." R. 1, PageID 16. We agree with the district court that this allegation sounds in *respondeat superior*—which does not form the basis for municipal liability under *Monell*—rather than deliberate indifference to a constitutional violation. *See id.* Further, Arsan's contention that the County and Board were "aware through lawsuits that employees of Greene County Children's Services have been sued for racial and ethnic discrimination and irregularities and failure to follow protocols," R. 1, PageID 21, is inapposite to Arsan's assertion that the defendants were deliberately indifferent to their employees' potential *Fourth Amendment* violations. *See City of Canton*, 489 U.S. at 390–91. We therefore affirm the district court's judgment on the pleadings on the failure to supervise and train claims against the County and Board.

### 3.  MOTION TO SET ASIDE JUDGMENT AND GRANT NEW TRIAL

On appeal, Arsan contends that the district court judge, "although himself raising the pleadings in this case, . . . failed to exercise his judicial experience and common sense in not

permitting Klumb's testimony and then denying Appellant's Motion to Set Aside Judgment, and thus abused his discretion." Appellant Br. at 21. To the extent we can make sense of this request for relief, we deny it.

### a. Standard of Review

We review a district court's denial of a Rule 60(b) motion for abuse of discretion. *Franklin v. Jenkins*, 839 F.3d 465, 472 (6th Cir. 2016). The district court abuses its discretion when it "relies upon clearly erroneous findings of fact, improperly applies the governing law, or uses an erroneous legal standard." *Luna v. Bell*, 887 F.3d 290, 294 (6th Cir. 2018) (quoting *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009)). We find abuse of discretion only if our review leaves us with "a definite and firm conviction that the trial court committed a clear error of judgment." *Burrell v. Henderson*, 434 F.3d 826, 831 (6th Cir. 2006) (quoting *Amernational Indus., Inc. v. Action- Tungsram, Inc.*, 925 F.2d 970, 975 (6th Cir. 1991)). Rule 60(b) relief "is the exception, not the rule," as we are guided by "public policy favoring finality of judgments and termination of litigation." *Franklin*, 839 F.3d at 472 (internal quotations omitted). As such, the rule "does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof." *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 385 (6th Cir. 2001).

### b. New Information After Trial

Arsan argues that the district court abused its discretion when it denied her Rule 60(b)(2) motion for relief from final judgment on the grounds of "newly discovered evidence." Appellant Br. at 20–21. Here, Arson contends that after the jury verdict, Klumb "revealed for the first time" that McDermott was the person who originally contacted Children's Services with the report about drug use. *Id.* Arsan also argues that she later learned there was a police car outside of her home

on the day of the search. Upon review of these arguments, we find that the district court did not abuse its discretion in denying Arsan's motion for relief from final judgment.

Under Rule 60(b)(2), a party may ask the district court to reopen the case because of "newly discovered evidence" that could not have been discovered in time (28 days after final judgment) to move for a new trial under Rule 59(b). Fed. R. Civ. P. 60(b)(2). "To prevail, a movant must demonstrate (1) that it exercised due diligence in obtaining the information and (2) that the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 615 (6th Cir. 2012) (citation, internal quotations, and brackets omitted). Thus, the newly discovered evidence "must have been previously unavailable," *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999), and "cannot be merely impeaching or cumulative," *Good v. Ohio Edison Co.*, 149 F.3d 413, 423 (6th Cir. 1998).

Here, the district court did not abuse its discretion in denying Arsan's motion for relief from final judgment on the basis of newly discovered evidence. Arsan's "newly discovered evidence" falls into two categories—that McDermott made the initial call to Children's Services and that there was a police car outside her home on the day of Weber's search. Appellant Br. at 20–21. Arsan does not show—at all, let alone by clear and convincing evidence—that she exercised reasonable diligence in obtaining this information (in fact, she conducted no written discovery or depositions), that she could not have learned this information in time to move for a new trial under Rule 59(b), or that this information was "material and controlling and clearly" would have changed the jury's Fourth Amendment finding. *HDC, LLC*, 675 F.3d at 615. Indeed, we struggle to understand how any of this "newly discovered evidence" is relevant, much less material, to whether Arsan consented to Weber's search. We therefore find that the district court

did not abuse its discretion in denying Arsan's Rule 60(b)(2) motion on the basis of newly discovered evidence.

### c. Rebuttal Testimony During Trial

Arsan argues that the district court abused its discretion when it denied her request to call Klumb as a rebuttal witness during trial. She contends that Klumb would have testified to the relationship between her and the Ottos, that Weber was biased against her, that there was a police car parked outside Weber's home while she was inside, and that Klumb did not make the initial report regarding Weber's alleged drug use to Children's Services. Appellant Br. at 19. Arsan does not situate this argument within a particular section of Rule 60 (her standard of review section cites only to Rule 60(b)(2) for newly discovered evidence) so we analyze this argument under general principles for reviewing a trial judge's decision to allow or deny rebuttal testimony during trial.

"A trial judge's determinations regarding the order of proof and scope of rebuttal testimony will not be disturbed absent an abuse of discretion." *Benedict v. United States*, 822 F.2d 1426, 1428 (6th Cir. 1987) (citing *Geders v. United States*, 425 U.S. 80, 86 (1976)). A district court judge has the discretion to "limit the scope of rebuttal testimony to that which is directed to rebut new evidence or new theories proffered in the defendant's case-in-chief." *Martin v. Weaver*, 666 F.2d 1013, 1020 (6th Cir. 1981) (internal citations omitted). Here, the district court did not abuse its discretion in denying Arsan's request to call Klumb as a rebuttal witness. None of the information that Arsan contends Klumb would have provided was relevant to the only issue at trial—whether Weber violated the Fourth Amendment in conducting the search. We therefore find that the district court did not abuse its discretion in excluding Klumb's rebuttal testimony.

### 4.  DISTRICT COURT'S ORDERING OF CLOSING ARGUMENTS

Last, in a one-sentence paragraph with no citations, Arsan argues that she is entitled to relief because "[t]he District Court altered the order of closing arguments without authority to do so." Appellant Br. at 57.  We find this argument meritless.

## III.

## CONCLUSION

For these reasons, we affirm the district court's granting of Fierst's motion to dismiss, judgment on the pleadings in favor of the county defendants on all but the Fourth Amendment claim against Weber, and denial of Arsan's motion to set aside the judgment and for a new trial.